Argued and submitted April 4, 1991, decision of Court of Appeals reversed and case remanded to Court of Appeals for further consideration April 23, 1992
See 113 Or App 641, 833 P2d 1333 (1992)

GEORGETOWN REALTY, INC.,
*Petitioner on Review,*

*v.*

THE HOME INSURANCE COMPANY,
*Respondent on Review.*

(CC A8708-05098; CA A50656; SC S37524)

831 P2d 7

Larry Dawson, Portland, argued the cause for petitioner on review and was on the petition with Kathryn H. Clarke, Portland.

I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause for respondent on review. With him on the response to the petition were Lisa E. Lear and Douglas G. Houser. Also on the petition was Donald A. Greig, of Landerholm, Memovich, Lansverk & Whitesides, Inc., P.S., Vancouver, Washington.

Henry Kantor, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Arthur C. Johnson, Eugene, filed a brief on behalf of *amici curiae* Wayne C. Annala; James G. Breathouwer; Frederic D. Canning; Wilford K. Carey; Thomas E. Cooney; Forest Evashevski, Jr.; Gray, Francher, Holmes & Hurley; William E. Flinn; Christopher James; Joelson, Gould, Wilgers & Dorsey, P.C.; John H. Kottkamp; Roderic S. MacMillan; Joseph J. McCarthy; Dennis W. Percell; Richard A. Roseta; Ray W. Shaw; James C. Tait; Thomas H. Tongue; Jan Thomas Baisch; William A. Barton; Burt, Swanson, Lathen, Alexander & McCann; Emmons, Kyle, Kropp, Kryger & Alexander; Ferder, Ogdahl, Brandt & Casebeer; Jeffrey P. Foote; Phil Goldsmith; John Paul Graff; Burl L. Green; James B. Griswold; Haugeberg, Rueter, Stone, Gowell & Fredericks; Johnson, Clifton, Larson & Bolin, P.C.; Jolles, Sokol & Bernstein; Garry L. Kahn; Charles F. Mitchell; Marvin S. Nepom; Richard P. Noble; Charles P.A. Paulson; Pippin & Bocci; Pozzi, Wilson, Atchison & O'Leary; Ringo & Stuber; Elden M. Rosenthal; Linda J. Rudnick; John D. Ryan; E.B. Sahlstrom; Michael R. Shinn; Charles J. Strader; Welch, Bruun & Green; Williams, Troutwine & Bowersox; D. Lawrence Wobbrock; and Portland Board of Realtors.

William L. Hallmark and William G. Earle, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

PETERSON, J.

## PETERSON, J.

This case involves an "excess claim"[1] by an insured against its liability insurer. Plaintiff's first claim was for damages for breach of contract in the amount of a judgment returned against it in an earlier case, less amounts paid by defendant under its liability policy, and for attorney fees. Plaintiff's second claim was for damages for "breach of fiduciary duty," "damage to its professional reputation," lost income and earning capacity, and punitive damages. The jury found for plaintiff on both claims and awarded punitive damages on the second claim. Defendant appealed, arguing that the second claim should not have been submitted to the jury and that the award of punitive damages should be reversed.[2]

■    The pivotal question is whether plaintiff's second claim is assertable as a tort claim. The Court of Appeals held that it is not and reversed. *Georgetown Realty v. The Home Ins. Co.*, 102 Or App 611, 796 P2d 651 (1990). We hold that it is and reverse the decision of the Court of Appeals.

### A. PROCEDURAL BACKGROUND

Plaintiff had a liability insurance policy with defendant. A third person filed a tort action against plaintiff. Defendant assumed plaintiff's defense under its policy. The policy provided that the company "shall * * * defend any suit against Insured(s) * * * and the Company may make such investigation, negotiation and * * * settlement of any claim or suit as it deems expedient." In the action filed by the third person, a verdict was returned against plaintiff for compensatory and punitive damages. Defendant refused to pay the entire judgment. Plaintiff then brought this action against defendant. Plaintiff's amended complaint bore the heading "Action at Law Breach of Contract; Breach of Fiduciary Duty." The first claim asked for damages for the amount of

---

[1] In this opinion, we use the term "excess claim" to describe a claim made by an insured against its liability insurer for damages allegedly sustained by the insured resulting from the insurer's failure to defend the insured with reasonable care. Such claims often involve, as does the case at bar, a claim that the insurer failed to use reasonable care to settle a third person's claim against the insured within the limits of the liability policy.

[2] There are other assignments of error that we do not need to discuss in this opinion, assignments of error that the Court of Appeals will consider on remand.

the judgment in excess of the amount paid by defendant and for attorney fees. In a second claim, plaintiff alleged that defendant violated its duty to conduct the defense "with due care, skill and diligence" in eight respects.[3] Plaintiff asked for $100,000 for "damage to its professional reputation[,] * * * lost income and earning capacity." Plaintiff also alleged in the second claim that defendant's "wanton, reckless and intentional disregard of [plaintiff's] rights and financial interest * * * constitutes a breach of defendant's fiduciary duty [in eight specified particulars]," and sought punitive damages of $2 million.

On the first claim, the jury returned a verdict in favor of plaintiff for $32,500 for defendant's "breach of contract"; on the second claim, the jury awarded $35,000 for defendant's "breach of duty" and punitive damages of $1,500,000. Defendant appealed, asserting that defendant's duties "were purely contractual" and that the trial court erred in submitting plaintiff's second claim, including the punitive damages

---

[3] The eight specifications were:

"Defendant The Home Insurance Company violated the obligation set forth in paragraph 7 above in its investigation, evaluation, discovery, settlement negotiation and defense of the case brought by Steven Mark Naylor in one or more of the following particulars:

"(a) In failing to adequately investigate the case and discover that there was substantial evidence in support of the case against Georgetown Realty, Inc.;

"(b) In failing to adequately advise Georgetown Realty, Inc. of the progress of its investigation of the case and the information and professional opinion disclosed by its investigation;

"(c) In failing to accept Steven Mark Naylor's offers to settle his case within the policy limits and to thereby protect Georgetown Realty, Inc. from a judgment;

"(d) In failing to make a reasonable offer to settle Steven Mark Naylor's case after it had been requested to do so by its attorney, Kent Whitaker, P.C.;

"(e) In failing to negotiate a settlement of the case;

"(f) In failing to properly investigate and evaluate the cases and to provide Georgetown Realty, Inc. with an accurate assessment of the risks of proceeding to trial;

"(g) In basing its decision to deny plaintiff the benefit of its insurance policy on the opinion of attorney Michael A. Lehner after submitting for Mr. Lehner's review a different policy than the one which defendant had issued to plaintiff Georgetown Realty;

"(h) In denying coverage to Georgetown Realty following receipt of Mr. Lehner's opinion when defendant knew or should have known that Mr. Lehner's opinion was not based on a review of the policy which defendant sold to Georgetown Realty."

claim, to the jury. The Court of Appeals held that "[p]laintiff did not state a claim for negligence" and "[r]emanded for entry of an amended judgment that deletes awards of compensatory and punitive damages on breach of fiduciary duty claim." *Georgetown Realty v. The Home Ins. Co., supra*, 102 Or App at 618-19.

## B. AN EXCESS CLAIM AGAINST A LIABILITY INSURER IS ASSERTABLE AS A TORT

Nearly a century ago, this court held that, where a duty arises from a contractual relationship between the parties, an action in tort may lie. In *Currey v. Butcher*, 37 Or 380, 61 P 631 (1900), the plaintiff employed the defendants, two lawyers practicing law as partners, to make a real property title search. They did so, but overlooked a judgment lien, which the plaintiff paid. The plaintiff then brought an action against the defendants. The opinion states that "the gist of the action is the negligence of the defendants in the performance of a duty which they owed to the plaintiff by reason of their employment." 37 Or at 384. The defendants claimed that the complaint was duplicitous in that it alleged more than one basis for relief and assigned error to the trial court's denial of their motion to require the plaintiff to elect whether she would proceed in contract or in tort. The court held that the complaint stated but one cause of action, explaining:

> "Where one adopts the legal profession, and assumes to exercise its duties in behalf of another for hire, the law imposes a duty to exercise reasonable care and skill, and if an injury results to his client from want thereof he is liable to respond in damages to the extent of the injury sustained. This duty and liability arises from the relation of the parties under the contract, rather than from the contract itself, and at common law the injured party could sue, either in assumpsit, for a breach of the implied promise, or in case, for the neglect of duty: 3 Enc. Pl. & Prac. 107. In the latter instance it is necessary to aver the contract of employment, showing the relation of attorney and client, as a matter of inducement, because without such contract there could be no duty to the plaintiff, and hence no liability. As stated by Mr. Justice McDonald, in *Emigh v. Pittsburg, etc. R.R. Co.* 4 Biss. 114 (Fed. Cas. No. 4,449): 'When there is a contract, either express or implied, from which a common law duty results, an action on the case lies for a breach of that duty, in which case the contract is laid as mere inducement, and the tort

arising from the breach of duty as the gravamen of the action. Thus, if a lawyer or physician is engaged by special contract to render professional services, and if, in the performance of such services, he is guilty of gross ignorance or negligence, an action on the case will lie against him, notwithstanding such special contract.' And Mr. Bliss, after quoting from Chitty that 'the inducement or averment by way of introductory allegation is peculiarly proper where a party is charged upon, or in respect of, the breach of a contract or implied duty resulting from any particular character or capacity of defendant,' says: 'This doctrine is applied to declarations against attorneys, physicians and mechanics for negligence, and against carriers and innkeepers for loss of goods; the contract or possession of the property and the injury being the gist or substance, while the allegations showing the occupation of the defendant, in reference to which the contract was made or the duty arose, show matter of inducement:' Bliss, Code Pl. (3 ed.) § 150." *Id.* at 384-86.

The rule stated in *Currey v. Butcher, supra,* has been followed since 1900, in cases involving physicians, lawyers, real estate brokers, architects, engineers, and landlords. Most of the cases involve statutes of limitations, cases in which the defendant asserts that the longer contract statute of limitations is inapplicable and that the tort statute of limitations is applicable and has run. *See Goodman v. Fernald,* 154 Or 654, 662, 61 P2d 1253 (1936) (claim against landlord by tenant for personal injuries, asserting breach of an agreement to repair, held barred by two-year tort statute of limitations); *Wilder v. Haworth,* 187 Or 688, 690, 213 P2d 797 (1950) (in negligence claim against a physician for personal injuries, tort limitations statute applies; "[t]he action, being based upon alleged negligent performance by defendant of his contract with plaintiff, sounds in tort"); *Dowell v. Mossberg,* 226 Or 173, 188-89, 355 P2d 624, 359 P2d 541 (1961) (failure of a physician to exercise due care in the treatment of a patient is a tort, not a breach of contract; therefore, tort statute of limitations applies); *Bales for Food v. Poole,* 246 Or 253, 256, 424 P2d 892 (1967) (claim against engineer for failure to use due care in preparing plans barred by two-year tort statute of limitations); *Lindemeier v. Walker,* 272 Or 682, 684-85, 538 P2d 1266 (1975) (claim against real estate broker for failure to obtain best price for real property barred by two-year tort statute of limitations); *U.S. Nat'l Bank v. Davies,* 274 Or 663,

666, 548 P2d 966 (1976) (claim against lawyer for giving bad advice governed by two-year tort statute of limitations); *Ashley v. Fletcher*, 275 Or 405, 550 P2d 1385 (1976) (claim against architect for failing to supervise construction and make inspections held barred by two-year tort statute of limitations).

In *Ashmun v. Nichols*, 92 Or 223, 234-35, 178 P 234, 180 P 510 (1919), this court recognized the possibility of overlapping tort and contract claims for the negligent performance of a contractual promise. The *Ashmun* court upheld a verdict for the plaintiff on her tort claim against her landlord for damages for personal injuries resulting from a failure to repair the leased premises as promised. *Id.* at 231, 243. The jury was instructed concerning both negligence and contributory negligence, and the court held that the verdict for the plaintiff was supported by sufficient evidence. *Id.* at 228-29, 237-39.

In a different context, the court reached a similar result in *Harper v. Interstate Brewery Co.*, 168 Or 26, 120 P2d 757 (1942). There, the plaintiffs were indebted to the defendant and executed an absolute deed as a mortgage. Upon the plaintiff's default, the defendant was authorized to record the deed and sell the property, with the surplus, if any, to be paid to the plaintiffs. The plaintiffs defaulted, and the defendant sold the property. Thereafter, the plaintiffs sought damages, claiming that the defendant failed to make a reasonable effort to sell the property for the best price obtainable. The defendant contended that the plaintiffs' claim, if any, was only for breach of contract and that an action in tort would not lie. The court stated that a mortgagee exercising a power of sale was a fiduciary and that the obligation of good faith and diligence was imposed on mortgagees. 168 Or at 39-42. The court held that a claim in tort could be asserted, and that tort damages were recoverable, stating:

> "Thus it may be necessary for a plaintiff to show a contract between himself and the defendant in order to establish that the defendant has assumed a position, relationship or status upon which the general law predicates a duty independent of the terms of the contract but it does not necessarily follow that his only remedy is ex contractu. If from the position, contractually assumed, a duty be raised independent of the contract an action in tort may lie.

"* * * * *

"Relationships of shipper and carrier, bailor and bailee, physician and patient, and attorney and client each originate in contract, express or implied; yet for a breach of duties imposed by general law upon persons assuming such relationship an action of tort may lie." *Id.* at 37-38.

This court's most recent discussion concerning imposition of tort liability on contracting parties is found in *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 611 P2d 1158 (1980). In that case, the plaintiff brought an action against an architect and a heating contractor seeking damages for the installation of a defective heating system. The defendant asserted that the claim was time-barred. The opinion states:

"Originally all actions upon any contract or liability, express or implied, as well as all actions not otherwise provided for could be commenced within six years, and only a few enumerated tort actions were limited to two years, but after 1870 the unenumerated actions 'not arising on contract' were transferred to the two-year statute. When plaintiffs chose to bring actions for personal or property damage caused by the negligence of defendants whose duty toward plaintiff arose from some agreed undertaking, the plaintiffs were entitled to plead the contract as the 'inducement' showing defendant's duty and to invoke tort law for the standard of care and for damages. *Currey v. Butcher, supra; Ashmun v. Nichols, supra.* A plaintiff who proceeded in this fashion had to sue within the two-year limitation on actions 'not arising on contract.'[4] *Goodman v. Fernald, supra; Wilder v. Haworth, supra.*" 289 Or at 258.

This court then concluded:

"Thus the statutes and the precedents leave us with several variations when an action for damages against one engaged to provide professional or other independent services is commenced after two years and is pleaded as a breach of contract. If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of

---

4 This last sentence may not be entirely correct. For many years, ORS 12.080 has contained a six-year limitation for "injuring personal property" (subsection (4)), or injuring an interest in real property (subsection (2)). We need not consider the possible applicability of ORS 12.080 in this case.

this noncontractual duty, then ORS 12.110 [the tort statute of limitations] applies. *Dowell v. Mossberg, supra.* Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability." 289 Or at 259.

The court held that the six-year contract statute of limitations applied, because the complaint "specified breaches of written contracts," provisions that "spell[] out the architect's obligations in considerable detail. * * * This is * * * the kind of contract that is designed not to leave the scope of the expected professional services to tort standards of professional performance. * * * [The complaint] assert[ed] breaches of specific contractual commitments." 289 Or at 261-62.

■■ The lesson to be drawn from this court's cases discussing the choice between contract and tort remedies is this: When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise. In some situations, a party may be able to rely on either a contract theory or a tort theory or both. *See Ashmun v. Nichols*, 92 Or at 234-35 (suggesting that a plaintiff might be able to rely on both contract and tort theories).

· Having examined some general principles, we turn to this court's past cases concerning excess claims against insurers. None of this court's decisions has held expressly that the insured may, or may not, bring a claim for negligence. The early decisions suggest that the nature of the action is for breach of the covenant of good faith that inheres

in the express contractual promise to defend the insured, while later decisions suggest that a claim may be brought for negligence.

*Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Or 1, 298 P2d 1002 (1956), was this court's first discussion of an excess claim against a liability insurer. The plaintiffs in that case appealed from a directed verdict in favor of the defendant insurer. The defendant had assumed the defense of two actions against the plaintiffs, pursuant to the terms of the policy. The defendant did not respond to an offer to settle the two actions, and ultimately the plaintiffs paid $10,000 more on the judgments than their insurance policy covered. They sought to recover the $10,000 from the defendant insurer under theories of "negligence and bad faith." 208 Or at 6.

After discussing the facts of the case, this court considered numerous cases from other jurisdictions that analyzed the nature of the action against an insurer in this situation. This court noted that some jurisdictions apply contract law; others apply principles of agency; and still others turn to tort law. *Id.* at 22. This court then surveyed the available precedents, *id.* at 23-38, and stated: "The minimum which is expected of an insurer is that it employ good faith when it disposes of settlement matters." *Id.* at 38.

Although this court did not plainly decide among the competing theories of liability for excess claims in *Radcliffe v. Franklin Nat'l Ins. Co.*, *supra*, it did discuss "negligence and bad faith" as alternative bases for liability and appeared to opt for the latter, which is a contract theory. This court's later cases concerning an excess claim confirm that reading of *Radcliffe*. In *Groce v. Fidelity General Insurance*, 252 Or 296, 302, 448 P2d 554 (1968), this court wrote:

> "We believe that the reasoning in *Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Or 1, 298 P2d 1002 (1956), is instructive. The right to expect one's insurer to exercise good faith in the settlement of claims is *a valuable contract right*." (Emphasis added.)

This court held that the insurer's breach of the obligation to perform under the policy in good faith is "as capable of assignment and survival as any other contract right." *Id.* at 302-03.

In *Eastham v. Oregon Auto. Ins. Co.*, 273 Or 600, 607, 540 P2d 364 (1975), this court expanded the description of the duty of good faith in a contract of liability insurance:

"Before proceeding further it is necessary to set forth an insurer's duty to its insured where an action is filed for more than the policy limits. In *Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Or 1, 38, 298 P2d 1002 (1956), this court said that '[t]he minimum which is expected of an insurer is that it employ good faith * * *.' Good faith requires the insurer, in handling negotiations for settlement, to treat the conflicting interests of itself and the insured with impartiality, giving equal consideration to both interests. With respect to settlement and trial, an insurance company must, in the exercise of good faith, act as if there were no policy limits applicable to the claim and as if the risk of loss was entirely its own. Bad faith is normally demonstrated by proving that the risks of unfavorable results were out of proportion to the chances of a favorable outcome. *Radcliffe, supra* at 47. R. Keeton, Insurance Law 511, § 7.8(b) (1971)."

Under that standard, this court held that the evidence was insufficient to permit a jury to find bad faith. *Id.* at 607-09; *see also Kuzmanich v. United Fire and Casualty*, 242 Or 529, 532, 410 P2d 812 (1966) (restating *Radcliffe's* good faith test).

*Farris v. U.S. Fidelity & Guaranty*, 273 Or 628, 542 P2d 1031 (1975), also was a contract case in which the plaintiffs brought an action against their liability insurer because it had refused to defend a tort claim asserted against them. This court held that the insurer had a duty to defend, but that the plaintiffs could not recover damages for mental anguish. 273 Or at 637-38. The issue for decision in a second appeal, *Farris v. U.S. Fid. and Guar. Co.*, 284 Or 453, 587 P2d 1015 (1978), was whether damages for mental anguish and punitive damages are recoverable in a contract action against the insurer. The court again noted "that the present action is not one in tort." 284 Or at 460. The court further asserted in *dictum* that this court had not decided whether an excess claim sounds in tort or in contract. *Id.* at 459.[5]

---

[5] In *Farris v. U.S. Fid. and Guar. Co.*, 284 Or 453, 587 P2d 1015 (1978), the insurer refused to defend at all. This court held that damages in tort were not recoverable because performance was never undertaken. "[D]efendant's failure to undertake representation of plaintiffs which required them to represent themselves

*Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 693 P2d 1296 (1985), involved a claim by an excess carrier against a primary carrier for damages arising out of the defense of the claim. This court stated:

> "Although our previous decisions have referred to concepts of 'good faith,' 'bad faith' and 'due care' in stating the duty, the insurer's duty to the insured comes down to this: In conducting the defense of a claim against an insured, including the investigation, negotiation, and litigation of the claim, the insurer must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle, where an opportunity to settle exists, if in choosing not to settle it would be taking an unreasonable risk — that is, a risk that would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results. Stating the rule in terms of 'good faith' or 'bad faith' tends to inject an inappropriate subjective element — the insurer's state of mind — into the formula. The insurer's duty is best expressed by an objective test: Did the insurer exercise due care under the circumstances[?]" 298 Or at 518-19.[6]

*Maine Bonding* is especially significant, because the basis of the primary insurer's duty of due care to the excess insurer was the former's duty of due care to the insured. *Id.* at 520-23 (the excess insurer is equitably subrogated to the rights of the insured against the primary insurer). This court held:

> "A primary insurer owes an excess insurer essentially the same duty of due diligence in claims handling and settlement negotiation it owes to an insured — due care under all circumstances." *Id.* at 523.

---

could only have been a breach of contract, and, in cases of breach, the law is clear that no recovery for mental distress because of threat of pecuniary loss is recoverable." 284 Or at 464-65. Where, as in *Farris*, the breach involves a complete failure to perform, or where a breach exists "without reference to and irrespective of any general standard," *Securities-Intermountain v. Sunset Fuel, supra*, 289 Or at 259, damages in tort are not recoverable. According to Dean Prosser, most courts hold that "a failure to begin or attempt performance of a contract * * * [amounts] to mere breaches of contract, for which no tort action will lie." Prosser, Selected Topics on the Law of Torts 388-89 (1953).

[6] The "objective" test of good faith in the performance of contract terms is generally the test under Oregon common law. *U.S. National Bank v. Boge*, 311 Or 550, 555-57, 814 P2d 1082 (1991).

In other words, the primary insurer's conduct would be actionable "negligence" toward the excess insurer if it were actionable negligence toward the insured.

In *Bollam v. Fireman's Fund Ins. Co.*, 302 Or 343, 347, 353, 730 P2d 542 (1986), this court held that a claim against a liability insurer for failure properly to defend a claim against the insured was barred by the two-year statute of limitations applicable to torts. It should be noted, however, that the plaintiff in that case made no claim that the six-year contract statute of limitations was applicable.

As discussed above, this court's prior cases have held that the pivotal question, in deciding whether one party to a contract may sue another party to the contract in tort for negligent performance of a term of the contract, is whether the allegedly negligent party is subject to a standard of care independent of the terms of the contract. This court has not previously answered that question in the present context. None of this court's prior cases concerning excess claims has expressly decided whether the liability insurer is subject to a standard of care that exists independent of the contract and without reference to the specific terms of the contract.

We now reach the same conclusion with regard to liability insurers that this court reached in the cases concerning physicians, lawyers, architects, and others. See *ante* at 102-06. As in those cases, the relationship here is between contracting parties. When a liability insurer undertakes to "defend," it agrees to provide legal representation and to stand in the shoes of the party that has been sued. The insured relinquishes control over the defense of the claim asserted. Its potential monetary liability is in the hands of the insurer.[7] That kind of relationship carries with it a standard

---

[7] The parties have referred to plaintiff's second claim as a claim for "breach of a fiduciary duty." This is a correct appellation in the same sense that one would state a claim for "breach of a physician's duty," "breach of a lawyer's duty," or "breach of a landlord's duty." In each case, the duty is one created by law, the duty is one that arises from the relationship between the parties, and the action is in the nature of an action on the case.

The form of action for a claim against a fiduciary for breaching a duty of care arising from the relationship is not materially different from a claim against a physician, a lawyer, or an engineer for breaching a duty of care arising from such a relationship. Notwithstanding repeated references by this and other courts to a "breach of a fiduciary duty," the form of action is the same, and the theory of

of care that exists independent of the contract and without reference to the specific terms of the contract. *See Strickland v. Arnold Thomas Seed*, 277 Or 165, 170, 560 P2d 597 (1977) (marketing agreement gave defendant complete control over pool members' seed; defendant thus was obliged to exercise the fiduciary duties of an agent); *Harper v. Interstate Brewery Co., supra* (mortgagee exercising power of sale creates duty independent of contract). Therefore, plaintiff's excess claim can be brought as a claim for negligence.

In defendant's opening brief, defendant made eight assignments of error concerning plaintiff's second claim. The Court of Appeals never reached four of the eight assignments of error because of its dismissal of the second claim. Our decision may also revive two other assignments of error. Accordingly, we remand the case to the Court of Appeals for further proceedings.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further consideration consistent with this opinion.

---

recovery — breach of the duty of care that the law implies from the relationship — is the same.