Argued and submitted April 18, resubmitted en banc August 8, affirmed October 24, 2007

Byron LOOSLI
and Melinda Loosli,
husband and wife;
Ben Lemire and Cynthia Lemire,
husband and wife;
and Divine Guidance, LLC,
dba Just A Good Car Lot,
*Plaintiffs-Appellants,*

*v.*

CITY OF SALEM,
a municipal corporation,
*Defendant-Respondent,*

*and*

Avis B. WOODRUM
and Louise Woodrum,
husband and wife,
*Defendants.*

Marion County Circuit Court
04C17616; A130044

170 P3d 1084

Gary M. Bullock argued the cause for appellants. With him on the briefs were Meredith Boyden and Gary M. Bullock & Associates, P.C.

Aaron D. Felton, Assistant City Attorney, argued the cause and filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

EDMONDS, J.

Schuman, J., dissenting.

**EDMONDS, J.**

Plaintiffs appeal after the trial court granted summary judgment to defendant City of Salem on plaintiffs' negligence claim. We affirm.

We state the facts in the light most favorable to plaintiffs, the nonmoving parties. ORCP 47 C. Plaintiffs desired to open a vehicle dealership in Salem and found an available lot on Commercial Street that they believed to be an advantageous location. On two occasions, one of the plaintiffs telephoned the city to find out if any zoning restrictions on the property prohibited it from being used as a vehicle sales business. On both occasions, a city employee informed her that there were no zoning or land use ordinances that prohibited such a use. Relying on those assurances, plaintiffs entered into a lease of the property and began to improve it.

In order to conduct business as a vehicle dealer, plaintiffs needed to obtain a certificate from the Oregon Department of Transportation (ODOT). Under ORS 822.020, ODOT will issue a vehicle dealer certificate if the applicant meets the filing and approval requirements of ORS chapter 822, which regulates vehicle-related businesses. One such requirement is that an applicant submit a certification "signed by a person authorized by the local governing body to do so, stating that the location of the business as given in the application for a certificate complies with any land use ordinances or business regulatory ordinances of the city or county." ORS 822.025(6).

In connection with their application for a vehicle dealer certificate, plaintiffs sought a certification from the city pursuant to ORS 822.025(6). After undertaking a computer check of the city's records, a city employee certified in writing that the property leased by plaintiffs complied with all relevant land use and business regulatory ordinances for the operation of a vehicle sales business. The city charged a fee for its certification, which was paid to the city cashier and not to the person who checked the city's records.[1] Plaintiffs

---

[1] The official who signed the certification testified at her deposition that she had no recollection of signing the certification and was unaware of the amount of the fee that plaintiffs paid to the cashier.

then submitted the city's certification with their application to ODOT and received a certificate from the department to operate a vehicle sales business. They subsequently opened their business on the property.

Shortly thereafter, the city notified plaintiffs that they were in violation of the city's land use ordinances and ordered them to cease operation of their sales lot. Ultimately, plaintiffs were required to relocate their lot, thereby incurring additional damages. Plaintiffs then filed this action against the city, alleging that the city had negligently represented that they could operate a sales lot on the leased property and that, as a result of the city's negligence, they had suffered economic losses. The city moved for summary judgment, arguing that, because plaintiffs' damages were solely economic in nature, they could not recover under the common law of negligence. The trial court granted the city's motion, and plaintiffs appeal.

■ Under Oregon law, a "negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992) (footnote omitted). Thus, a plaintiff cannot maintain an action for purely economic loss based on a negligent misrepresentation unless the defendant has breached a duty outside the common law of negligence. *Id.* Duties outside the common law of negligence arise from two sources. First, they may arise from a duty imposed by statute where the legislature has imposed a duty to act and has "contemplate[d] that there could be liability in connection with the authority and duty to take the actions" required by the statute. *Scovill v. City of Astoria*, 324 Or 159, 169-70, 921 P2d 1312 (1996). Second, a duty outside the common law may arise from a "special relationship" between the alleged tortfeasor and the plaintiff. *Onita*, 315 Or at 164-65. *See also SFG Income Fund, LP v. May*, 189 Or App 269, 278, 75 P3d 470 (2003).

■ On appeal, plaintiffs contend that the city's negligent certification pursuant to ORS 822.025(6) violated a duty beyond the common-law duty to exercise reasonable care to

avoid foreseeable harm. The initial question, then, is whether ORS 822.025(6) creates a duty that supports a claim for purely economic loss—*i.e.*, whether the legislature intended to create a duty under ORS 822.025(6) that, if breached, could expose the city to tort liability. *Scovill*, 324 Or at 169-70. Subsection (6) of ORS 822.025 is part of a statute establishing the requirements for an application to ODOT for a vehicle dealer certificate. The statute as a whole is part of ORS chapter 822, a comprehensive regulatory scheme for vehicle dealers that includes penalties and education, bonding, and insurance requirements. Nothing in the text of ORS 822.025 or its context suggests that the legislature intended to create a duty on the part of certifying local governments that, if breached, could make them liable to applicants. Rather, ORS 822.025(6) is aimed at protecting the public interest in requiring vehicle dealers to comply with local land use and business regulatory ordinances. Thus, we conclude that the statute does not impose a duty running from the city to plaintiffs that would support a negligence claim under these circumstances.

In the absence of any legislative intent to protect persons in plaintiffs' circumstances, plaintiffs must demonstrate the existence of a "special relationship" between them and the city. In determining whether the parties are in a "special relationship," we are informed by Oregon case law that has developed on that subject since the beginning of the twentieth century. *Currey v. Butcher*, 37 Or 380, 61 P 631 (1900), is exemplary in that regard. In *Currey*, the plaintiff employed two lawyers to perform a search of public records to ascertain whether title to real property was clouded. The lawyers overlooked a judgment lien that the plaintiff subsequently was required to pay, and the plaintiff then brought an action against the lawyers based not on the breach of their contract of employment but on the breach of their duty to exercise reasonable care and skill. The Supreme Court held that such a duty was implied by operation of law from the "special contract" for the performance of professional services. *Id.* at 385-86. Since 1900, Oregon courts have followed the same understanding in cases involving physicians, lawyers, real estate brokers, architects, engineers, and landlords, where parties entered into voluntary relationships that, by their nature,

gave rise to responsibilities beyond the terms of their contractual obligations. *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 102-10, 831 P2d 7 (1992).

In *Georgetown Realty*, the court held, consistently with prior case law, that an insurer could be held liable to the insured for a breach of duty that was independent of the terms of an insurance policy, where the insurer agreed to provide legal representation to and stand in the shoes of the insured. The court held that, under those circumstances, the insured had relinquished control over the defense of the claim asserted against it and had entrusted its potential liability to the insurer. Thus, it followed that the insurer was required to act in the best interests of the insured in defending the claim. 313 Or at 110-11.

After its decision in *Georgetown Realty*, the Supreme Court in *Onita* refused to extend the application of the "special relationship" rule to negotiations between parties dealing at arm's length who were seeking to further their own economic interests. Observing that the court had previously recognized the existence of a special relationship between attorneys and clients, the *Onita* court explained that, "unlike parties who are negotiating at arm's length, the attorney is engaged by the client to use his or her expertise for the benefit and protection of the client's interests." 315 Or at 160. Other examples of similar relationships, according to the *Onita* court, include principal and agent relationships where the agent owes duties of care and loyalty to the principal outside the terms of the contractual relationship itself. The *Onita* court summarized its holding:

> "In the above relationships, the professional who owes a duty of care is, at least in part, acting to further the economic interests of the 'client,' the person owed the duty of care. In contrast, the present case involves two adversarial parties negotiating at arm's length to further their own economic interests."

315 Or at 161.

In *Conway v. Pacific University*, 324 Or 231, 240, 924 P2d 818 (1996), the court further explained the nature of "special relationships" for purposes of the rule:

"Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

"This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships. It also exists in the type of situation described in *Georgetown Realty*, in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party. That special responsibility carries with it a duty to exercise reasonable care to avoid making negligent misrepresentations."

(Emphasis in original.) In *Conway*, the court found that the plaintiff, a college professor, had not authorized the university to exercise independent judgment on his behalf by contract or otherwise. Both parties were acting for their own benefit in negotiating a renewal of the plaintiff's contract. 324 Or at 242. The court therefore held that no special relationship existed between the parties for purposes of the rule. *Id.* at 244.

The remaining question before us is whether, in light of the above principles, the relationship that existed between plaintiffs and the city is a "special relationship" in which a heightened duty of care existed on the part of the city because the city owed a "special responsibility" to plaintiffs. *Conway*, 324 Or at 240. We observe first that the relationship of the parties resulted solely from plaintiffs' need to comply

with ORS 822.025(6). Without the mandate of the statute, the parties' relationship would not have existed. The city's participation in the relationship occurred because of the existence of the statute requiring it to certify whether plaintiffs' proposed use of their property was in compliance with the city's land use and business regulatory ordinances. Those facts are in contrast to cases in which courts have found a "special relationship" based on circumstances where the parties have *voluntarily* entered into relationships that impose duties beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *See, e.g., Hale v. Groce*, 304 Or 281, 284-87, 744 P2d 1289 (1987).

Second, not unlike the circumstances in *Conway*, the city here had no *heightened* responsibility to act for the benefit of plaintiffs in administering, overseeing, or otherwise taking care of plaintiffs' application. There are no circumstances in this case from which it can be inferred that plaintiffs asked the city or its employees to assume duties or responsibilities beyond those imposed by the statute and the ordinary citizen-local government relationship that the statute contemplates.[2] Rather, the city's responsibility was to treat plaintiffs' application like any other application for certification. The city's conduct was essentially ministerial in nature—checking its records for compliance with its land use and business regulatory ordinances. That kind of conduct is far removed from the kind of conduct that has been held actionable in other cases based on the existence of a "special relationship."[3] The dissent's primary argument is that plaintiffs relied on the city to step into plaintiffs' shoes in order to do something for plaintiffs that plaintiffs themselves could not. Thus, in its view, the city had a heightened duty to act on plaintiffs' behalf because plaintiffs had relinquished control

---

[2] The city's certification states, "As the zoning official for the locality in which this business is located, I verify by my signature below that the location of this business * * * complies with any land use ordinances and business regulatory ordinances of the city * * *, as appropriate pursuant to ORS 822.025[(6)]."

[3] In a principal-agent relationship, or a relationship between a lawyer, architect, physician, engineer, or real estate broker and client, there is a heightened duty on the part of and an entrustment of responsibility to the actor, a particular person or entity, to exercise independent judgment on the principal's or the client's behalf to achieve a desired outcome or resolution. *Conway*, 324 Or at 239.

over the subject matter to the city and had placed its monetary liability in the city's hands. We are unpersuaded. The dissent's reasoning fails to recognize that the city's employee had no obligation to pursue plaintiffs' interests when she ran a computer check regarding the regulations applicable to plaintiffs' property. Rather, she was merely complying with the mandate of ORS 822.025(6), and her obligation was to protect the interests of the public at large and not the interests of plaintiffs.[4]

The effect of the dissent's reasoning, if adopted, would be to expand the category of "special relationships" to include relationships between government officials and applicants for government permits. That would mark a significant departure from this court's previous decisions regarding the nature of the relationship between government officials and applicants. *See, e.g., Wild Rose Ranch Enterprises v. Benton County*, 210 Or App 166, 175, 149 P3d 1281 (2006), *rev den*, 342 Or 504 (2007) (holding that an ordinance giving a planning official authority to interpret a development code did not create tort liability and that statements by local government officials did not demonstrate an intent by the county to undertake to protect the plaintiffs' economic interests); *SFG Income Fund LP*, 189 Or App at 281-82 (holding that the violation of ORS 215.050, a statute implicitly requiring counties to maintain accurate land use records, did not give rise to tort liability for economic harm).

In summary, there is no "special relationship" between the parties in this case that exists apart from the statutory duty imposed by the legislature on the city. Because there is no indication that the legislature intended to impose liability on local governments for economic damages based on a negligent certification made under ORS

---

[4] The dissent points out correctly that for a "special relationship" to exist, the actor assuming the responsibility for the other party's interests need only act "in part" for the other party. Of course, that characterization is absolutely correct regarding a typical professional or principal-agent relationship where the actor is compensated for fulfilling a heightened responsibility on behalf of the person for whom the services are performed. But unlike in those kinds of relationships, there is no evidence in this record that the administrative fee charged by the city and paid by plaintiffs was intended to compensate the city for anything other than administering ORS 822.025(6).

822.025(6), the trial court properly granted summary judgment to the city.

Affirmed.

**SCHUMAN, J.,** dissenting.

Plaintiffs brought this action for negligent misrepresentation against the City of Salem, alleging that they had incurred economic damages because the city first told them that they could operate a used car lot on a particular parcel of land and certified that conclusion to the Oregon Department of Transportation (a certification without which plaintiffs could not obtain a business license), and then, after plaintiffs had leased the land and invested money in opening the business, told them that the operation was unlawful. The trial court granted the city's motion for summary judgment, reasoning that, because plaintiffs' damages were purely economic, defendant could be liable only if it owed a duty to plaintiffs over and above the general common-law duty to avoid unreasonable risk of foreseeable harm—and that defendant owed no such duty. Unlike the majority, I conclude that defendant owed plaintiffs a heightened duty. I therefore dissent.

In Oregon, a person ordinarily is not liable for negligently causing purely economic loss unless the negligent act is the breach of a "duty outside the common law of negligence," *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987), that is, a duty beyond the general duty to exercise reasonable care to avoid foreseeable harm, *see Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). That general rule applies to negligent misrepresentations. *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992). Duties "outside the common law of negligence" might be imposed by statute, or they might arise from the nature of a "special relationship" between the alleged tortfeasor and the plaintiff. *Conway v. Pacific University*, 324 Or 231, 239-41, 924 P2d 818 (1996) (special relationship); *Onita Pacific Corp.*, 315 Or at 160-61 (same); *SFG Income Fund, LP v. May*, 189 Or App 269, 274-75, 75 P3d 470 (2003) (statute). I agree with the majority that, in the present case, no statute imposed a duty running from defendant to plaintiffs.

The nature of the relationship between defendant and plaintiffs, however, did give rise to a heightened duty. The kinds of relationships that give rise to liability for negligently caused economic damages have been described as follows, with the caveat that the determination is always fact specific:

"In *Onita*, this court described the relationships * * * as those in which the party who owes a duty of care is acting, 'at least in part, * * * to further the economic interests of the "client," the person owed the duty of care.' 315 Or at 161. Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

"This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships. It also exists in the type of situation * * * in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party. That special responsibility carries with it a duty to exercise reasonable care to avoid making negligent misrepresentations."

*Conway*, 324 Or at 240-41 (emphasis in original). We must therefore determine whether defendant's employees, in their official capacity, agreed to exercise independent judgment for the purpose of promoting plaintiffs' economic interest, thereby putting plaintiffs in a position in which they had to rely on defendant's judgment, in a relationship that was

"similar" to a professional-client relationship or a principal-agent relationship.

In applying these precepts, I note an important distinction between plaintiffs' different contacts with defendant. Nothing in the record indicates that the two telephone conversations between plaintiff Melinda Loosli and defendant's employee were anything beyond relatively anonymous inquiries regarding the zoning status of a parcel of property. Nothing in the record, in other words, implies that defendant knew that plaintiffs would rely on the information in trying to meet the statutorily required certification that the property was usable as a car lot or in deciding whether or not to proceed with a plan to lease the property for that use. Plaintiffs were therefore in a situation that is indistinguishable from the plaintiffs in *SFG Income Fund, LP*. In that case, the plaintiffs were damaged because a county employee negligently gave them erroneous zoning information. They argued that, "because the county planners' work required them to use their professional expertise to provide zoning and land use information to members of the public, there exists a special relationship of entrustment in which the county has assumed a duty to plaintiffs to avoid providing inaccurate information." 189 Or App at 280. We rejected that argument:

"On the facts of this case, there is no reasonable inference to be drawn that the county planner who provided information to [one of the plaintiffs] had a special relationship with her. No communication took place between the planner and [her] that indicates that the planner assumed a duty other than that provided to any member of the public. Nor did the county and plaintiffs reach an understanding that the county would take on a particular responsibility or that plaintiffs entrusted the planner with the responsibility of exercising independent judgment on their behalf or furthering their economic interests. The relationship between plaintiffs and the county differs in its nature from those instances where there is a special relationship between the parties. No professional, formal or financial relationship existed between these parties. As real estate appraisers, plaintiffs and their employees made numerous telephone calls to the county planners to gather zoning information on properties. Plaintiffs spoke with whomever had counter duty that day. Their phone calls received the

> same kind of response that would be received by other appraisers or members of the public making such an inquiry. They did not pay for the information received from the person on duty."

*Id.* at 281. In concluding that no special relationship existed, then, we emphasized several aspects of the situation. As far as the county employee knew, the request for information was the same as all other requests from the general public. The employee had no reason to believe that providing the information would induce any particular action by the plaintiffs or that plaintiffs sought the information to advance their economic interests. No money changed hands. All of those facts underlying our decision in *SFG Income Fund, LP*, apply to the two telephone conversations between plaintiff Loosli and the city in the present case. Insofar as those conversations are concerned, plaintiffs and defendant were not in a special relationship.

I reach a different conclusion, however, with respect to the relationship that was in effect when defendant signed the written certification of zoning compliance. When that event occurred, defendant's employee, acting within the scope of her employment, signed the following statement:

> "As the zoning official for the locality in which this business is located, I verify by my signature below that the location of this business as stated on this application, complies with any land use ordinances and business regulatory ordinances of the city or county, as appropriate pursuant to ORS 822.025[(6)]."

That statement defined a new relationship between plaintiffs and defendant. In signing it, defendant acknowledged that it knew that plaintiffs planned to submit the certification in their application to the Department of Transportation in order to obtain a vehicle dealer license so that they could go into business; the reference to ORS 822.025(6) could not imply anything else. Further, defendant was the only entity that could provide the necessary certification; plaintiffs, in other words, had to rely on the requested information, and defendant knew that as well. Plaintiffs, in essence, informed defendant that the economic viability of their business at that specific location depended on defendant's exercise of its

unique, statutorily imposed authority to obtain information and, based on that information, to certify to state regulators that plaintiffs were in compliance with applicable regulations. For the performance of that task, plaintiffs paid defendant a fee. In terms used by the Supreme Court, the city was acting "at least in part, * * * to further the economic interest" of plaintiffs; plaintiffs had "effectively * * * authorized" the city to "exercise independent judgment" in the plaintiffs' behalf and interest;[1] plaintiffs were "placed in a position of reliance" on the city; the city had "responsibility and control over the situation"; plaintiffs had "relinquished control over the subject matter" to the city and "placed its potential monetary liability" in the city's hands. *Conway*, 324 Or at 240-41.

Further, unlike the relationship defined by plaintiffs' earlier telephone conversations with a city employee, the relationship defined by the city's certification on plaintiffs' behalf to the state was not a two-party interaction in which the parties were dealing with each other at arm's length; rather, it involved the city stepping into plaintiffs' shoes in order to do something with a third party, *on plaintiffs' behalf*, that plaintiffs themselves could not perform. *See Onita*, 315 Or at 161 (drawing distinction).

Although the relationship between plaintiffs and defendant was not between a professional and client, nor between an employee and an employer, it was a "similar relationship[ ]." *Conway*, 324 Or at 240. In determining whether a relationship is "special" so as to impose a duty beyond the common-law duty to exercise reasonable care to avoid foreseeable harm, we conduct a functional as opposed to a formal inquiry. In other words, we are guided not by the name of the relationship ("lawyer-client," "student-teacher") but by the roles that the parties assume in a particular interaction. *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 366, 111 P3d 762, *rev den*, 339 Or 406 (2005); *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev*

---

[1] Although the city official who signed plaintiffs' certification testified that the process involved nothing more than a quick computer check, the fact remains that the city's duty was to determine whether fixed legal standards applied to specific facts—a duty that involves the city's exercise of independent judgment, albeit, here, not a difficult or complex exercise.

*den,* 334 Or 190 (2002). Had plaintiffs been seeking the certification to government authorities of information in the context of tax or accounting regulations, and had defendant been their attorney or accountant, and had defendant's negligence caused economic damage, we would have a classic case of recoverable economic damages, because plaintiffs would have "relinquished control over the subject matter of the relationship to the other party and * * * placed its potential monetary liability in the other's hands." *Conway,* 324 Or at 241. That is what occurred here. I therefore conclude that, by virtue of the relationship established when defendant's employee signed the certification, defendant incurred a duty to plaintiffs.[2]

In my opinion, the court erred in granting defendant's motion for summary judgment. Although defendant had no relationship-based duty to plaintiffs until defendant signed the application erroneously verifying plaintiffs' compliance with zoning and land use ordinances so that plaintiffs could obtain a business license, a relationship-based duty arose at that time. Plaintiffs are entitled to the opportunity to prove that some of their damages resulted from that erroneous certification and not from the earlier negligent misrepresentations.

Landau and Wollheim, JJ., join this dissent.

---

[2] The facts of this case are distinguishable from those in *Wild Rose Ranch Enterprises v. Benton County,* 210 Or App 166, 149 P3d 1281 (2006), *rev den,* 342 Or 504 (2007), and *Indian Creek Development Co. v. City of Hood River,* 203 Or App 231, 125 P3d 50 (2005). In each of those cases, applying an analysis akin to that in *SFG Income Fund, LP,* we held that the trial courts had erred in denying motions for directed verdicts against negligence and negligent misrepresentation claims based on public entities' allegedly erroneous provision of land use-related information. In those cases—as in *SFG Income Fund, LP,* and with respect to plaintiffs' telephone conversations with defendant here, but unlike their later interaction involving certification to the state—the defendants were not paid by the plaintiffs to provide information to third parties so that the plaintiffs could realize economic benefits. In sum, the relationship between the plaintiffs and the governmental defendants in *Wild Rose Ranch Enterprises* and *Indian Creek Development Co.* approximated the relationship between plaintiffs and defendant in this case up to the time of certification, but not after certification.