Argued and submitted May 14, affirmed August 20, 2003

**SFG INCOME FUND, LP,**
a Washington limited partnership,
*Plaintiff,*

*v.*

**Rick V. MAY,**
an individual,
**Patrick MacDowell,**
an individual,
and **May & Associates,**
an Oregon corporation,
*Defendants.*

**Rick V. MAY,**
an individual,
**Patrick MacDowell,**
an individual,
and **May & Associates,**
an Oregon corporation,
*Third-Party
Plaintiffs - Appellants,*

*v.*

**MULTNOMAH COUNTY,**
an Oregon Municipality,
*Third-Party
Defendant - Respondent.*

9906-06181; A113124

75 P3d 470

270

John Paul Graff argued the cause for appellants. With him on the briefs were Susan Z. Whitney, and Stewart, Sokol & Gray, LLC, and Graff & O'Neil.

Sandra N. Duffy, Assistant County Attorney, argued the cause for respondent. With her on the brief was Thomas Sponsler, County Attorney for Multnomah County.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiffs[1] appeal from the grant of an ORCP 60 motion for a directed verdict in favor of the county at the close of plaintiffs' case-in-chief. Plaintiffs seek reversal of the judgment of dismissal of their action that followed and a remand for a new trial on their negligence and negligent misrepresentation claims against the county. We view the evidence in the light most favorable to plaintiffs, giving them the benefit of every favorable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 422, 837 P2d 505 (1992), *cert den*, 507 US 1017 (1993). Based on those facts, we decide as a matter law whether plaintiffs made out legally cognizable claims so as to preclude the grant of the motion. *See Conway v. Pacific University*, 324 Or 231, 239, 924 P2d 818 (1996). We conclude for the reasons that follow that the trial court ruled correctly, and we therefore affirm.

SFG Income Fund (SFG), a mortgage lender, hired plaintiffs to perform a real estate appraisal on residential property located in rural Multnomah County. For its residential appraisals, plaintiffs typically relied on zoning information obtained over the telephone from the Multnomah County Planning Department. Following that practice, plaintiffs' employee, Edgel, placed a phone call to the county planning department to obtain zoning information about the property. Edgel identified herself and the fact that she worked for plaintiffs' appraisal company. In response to Edgel's inquiry about the subject property, an unidentified county land use planner on counter duty provided information to her that was incorrect.[2] After consulting maps and files, the county planner told Edgel that the building on the property was legal, that it had no land use violations on record, and that there were no pending claims alleging land use violations. The county planner also told Edgel that the zoning designation for the property was CFU-4, meaning that it was zoned for commercial forest use with a four-acre minimum lot

---

[1] We refer to third party plaintiffs May & Associates, May, and MacDowell as "plaintiffs" in this opinion.

[2] Members of the county planning staff were regularly assigned a particular day to work at a counter where the public could call or come in with questions about various properties throughout the county.

size for improvements. Some of the information that the planner gave to Edgel came from a misfiled and inaccurate document. Other information was simply incorrect. Plaintiffs relied on the information received from the county planner and included it in their appraisal for SFG. In turn, SFG relied on plaintiffs' appraisal to make a substantial loan on the property that, in reality, had minimal value because of the land use constraints. There were, in fact, code violations requiring the removal of the existing structures, and the property could not be built on in the future. As it turned out, the recipient of the loan failed to make any payments. After SFG brought foreclosure proceedings and purchased the property at foreclosure, it brought an action against plaintiffs for the damage. Ultimately, SFG's claims against plaintiffs were dismissed pursuant to a settlement agreement and payment of $160,000 to SFG by plaintiffs. Plaintiffs also brought this third-party action against the county alleging claims for negligence and negligent misrepresentation in an effort to require the county to indemnify plaintiffs for the amount of damages paid to SFG, claims that form the basis for this appeal.

■ Plaintiffs assign error to the dismissal of both their claims. We consider each in turn. Plaintiffs' first claim for relief in their complaint alleges, in relevant part:

"The County was negligent in providing the information to [plaintiffs]. As a result of the County's negligence, [plaintiffs are] exposed to liability to [SFG], and the County should indemnify [them] for the amount of any damages recovered in this action by [SFG] against [plaintiffs]."

Plaintiffs seek only damages for economic loss in their first claim for relief. At the end of plaintiffs' case-in-chief and in response to the trial court's effort to clarify the pleadings, plaintiffs' counsel characterized the first claim as a claim in "negligence." Plaintiffs argue that the trial court erred when it ruled that plaintiffs' negligence claim could not support a recovery of damages for a purely economic loss.[3] For the following reasons, we hold that the trial court ruled correctly.

---

[3] Defendant argues that we should not address plaintiffs' arguments relating to the negligence claim because plaintiffs' did not make them to the trial court. ORAP 5.45. However, the issues were raised sufficiently in plaintiffs' third-party complaint, trial memorandum, and in trial counsel's argument to the court in

■    In negligence actions seeking to recover for only economic harm, a plaintiff must establish a duty independent of the general obligation to prevent foreseeable harm. *Hale v. Groce,* 304 Or 281, 284, 744 P2d 1289 (1987).[4] Here, plaintiffs' negligence claim is premised on the proposition that the county planning department owed them a duty prescribed by statute and ordinance to maintain accurate land use and zoning records about real property in the county and to provide that information to members of the public upon request. Consequently, plaintiffs argue, that when the county furnished them inaccurate information it became liable for damages that resulted. Specifically, they assert that such a duty originates under ORS 215.050[5] and Multnomah County Code (MCC) 11.15.8005.[6] We disagree for the reasons that follow.

---

opposition to defendant's motion for a directed verdict to preserve them for purposes of appeal.

[4] "Claims for purely economic loss have been limited, because they would otherwise 'allow limitless recoveries and have ruinous consequences. Such indirect economic losses are too open-ended.' *Ore-Ida Foods v. Indian Head,* [290 Or 909, 917, 627 P2d 469 (1981)]. The purpose of requiring some special relationship is to limit those potentially limitless damages."

*Ammons v. Jackson County,* 116 Or App 106, 111, 840 P2d 1345 (1992), *modified on recons,* 119 Or App 181, 850 P2d 376 (1993) (affirming the result upon reconsideration of the effect of *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or 149, 843 P2d 890 (1992)).

[5] ORS 215.050 provides:

"(1) Except as provided in ORS 527.722, the county governing body shall adopt and may from time to time revise a comprehensive plan and zoning, subdivision and other ordinances applicable to all of the land in the county. The plan and related ordinances may be adopted and revised part by part or by geographic area.

"(2) Zoning, subdivisions or other ordinances or regulations and any revision or amendments thereof shall be designed to implement the adopted county comprehensive plan.

"(3) A county shall maintain copies of its comprehensive plan and land use regulations, as defined in ORS 197.015, for sale to the public at a charge not to exceed the cost of copying and assembling the material."

[6] MCC 11.15.8005 provides:

"Subject to the direction of the Board, the Planning Director or the Director's delegate shall perform the following duties:

"A. Schedule and assign proposed actions for hearings and review;

"B. Conduct all correspondence of the Planning Commission and Hearings Officer;

"C. Give notices as required by law and by this Chapter;

"D. Maintain dockets and minutes of all hearings;

Whether a statute creates a duty, the breach of which could be tortious to the one harmed as a result of the breach, is determined by discerning what the legislature intended. *Scovill v. City of Astoria*, 324 Or 159, 166, 921 P2d 1312 (1996). An analysis of legislative intent begins with the text and context of the statute involved. ORS chapter 215 provides authority for counties to zone land consistently with the statewide land use planning goals. *Lane County v. LCDC*, 325 Or 569, 573, 942 P2d 278 (1997). ORS 215.050 specifically provides for county adoption, revision, and implementation of comprehensive zoning plans and land use regulations. Subsection (1) designates who is responsible for adoption and revision as well as how those tasks may be accomplished. Subsection (2) ensures that all actions help implement the comprehensive plan adopted by the county. Subsection (3) provides that those plans and regulations be made available for sale to the public. No provision of ORS 215.050 expressly requires the county to provide accurate information from its land use record to a member of the public upon request. Although the statute implicitly imposes a duty on the county to act to maintain land use records, and it can be further implied that the duty to maintain records carries with it the duty to maintain the records in an accurate manner, the statute does not expressly address the effect of *the failure* to carry out that duty, nor does it indicate to whom the duty is owed.

---

"E. Compile and maintain all necessary records, files and indexes;

"F. Record all continuances, postponements, dates of giving notices and minutes and summaries of all actions taken by the Planning Commission;

"G. Record the decision of the Planning Commission and the Hearings Officer on each matter heard and the vote of each member of the Planning Commission, members absent or failing to vote, and the reasons for the decision;

"H. Provide copies of records to any party requesting the same upon the payment of a fee therefor established by the Director of the Department of Environmental Services and adopted by resolution of the Board of County Commissioners;

"I. File orders and decisions of the Planning Commission and Hearings Officer with the Clerk of the Board;

"J. File notices of review of actions by the Hearings Officer with the Clerk of the Board as provided in MCC .8255;

"K. Perform such other functions as may be assigned by the Board."

(Underscoring in original.)

■  In *Scovill*, the court rejected the argument that no statutory tort can arise unless the legislature *expressly* intended that a tort remedy would arise from the breach of a duty created or imposed by statute. 324 Or at 169-70. Rather, the issue is whether the legislature *contemplated* that there could be tort liability arising out of such a breach, and "whether a statute that imposes a duty also gives rise to a tort claim for breach of that duty is generally a matter for court decision." *Id.* Thus,

> "[w]hen a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

*Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 330, 630 P2d 840 (1981) (quoting the *Restatement (Second) of Torts* § 874(A)).

■  Here, the language of ORS 215.050 does not suggest that the legislature intended the statute to protect members of the public from harm resulting from the receipt of inaccurate information about permitted land uses caused by the maintenance of inaccurate records. Rather, the purpose of the statute is self-evident: to authorize the adoption and revision of comprehensive plans[7] and zoning, subdivision, and other ordinances applicable to land use in the county and to make available to the public copies of those regulations when enacted. Because plaintiffs are not in a class of persons to whom the legislature intended to afford a remedy for the

---

[7] ORS 197.015 provides, in relevant part:

"(5) 'Comprehensive plan' means a generalized, coordinated land use map and policy statement of the governing body of a local government that interrelates all functional and natural systems and activities relating to the use of lands, including but not limited to sewer and water systems, transportation systems, educational facilities, recreational facilities, and natural resources and air and water quality management programs. * * *

"* * * * *

"(11) 'Land use regulation' means any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan."

harm they suffered, it follows that they cannot rely on ORS 215.050 as the source of an independent duty upon which to base their action.

■ Plaintiffs also rely on MCC 11.15.8005, which details the duties of the Multnomah County Planning Director.[8] Those duties include responsibilities for hearings including related correspondence, notices, dockets, minutes, records of actions and decisions by the planning commission and hearing officer. MCC 11.15.8005 A - G. Related to those duties, the ordinance directs that the planning director shall provide copies of records to parties for a fee. MCC 11.15.8005 H. MCC 11.15.8005 I and J provide that the director shall file orders, decisions, and notices of review of actions with the clerk of the board. Finally, MCC 11.15.8005 K provides that the director perform other functions assigned to the director by the county board.

Similarly to ORS 215.050, MCC 11.15.8005 makes no express reference regarding a duty owed to the public by the county planner in furnishing correct information or regarding the information that plaintiffs complain was incorrectly provided to them. Again, the proper inquiry is whether the county in adopting the ordinance intended to provide a tort remedy to a class of persons who are harmed by the receipt of incorrect land use information. Although MCC 11.15.8005 E requires that the planning director "[c]ompile and maintain all necessary records, files and indexes[,]" that provision appears to be aimed at defining the duties of the director. The intended beneficiaries are likely the planning commission and its staff, the hearing officer, and the parties involved in land use proceedings. For instance, MCC 11.15.8005 H requires "copies of records *to any party* requesting the same upon the payment of a fee * * *." (Emphasis added.) Subsections F and G provide context for the phrase "any party" by referring to persons or entities before the Planning Commission or Hearings Officer. Moreover, even if plaintiffs could be considered "parties" under the ordinance, there is no suggestion in the language of the ordinance that

---

[8] We assume without deciding that the county has the authority to provide by ordinance the basis for statutory tort liability. *See Eduardo v. Clatsop Community Resource*, 168 Or App 383, 386 n 2, 4 P3d 83 (2000).

the county intended tort liability to exist even if the duty to maintain accurate records is breached. Accordingly, we conclude that plaintiffs have not demonstrated that the county owed them an independent duty under its own ordinances, and the court did not err in granting the ORCP 60 motion.

■ Plaintiffs' second claim for relief alleges negligent misrepresentation on the part of the county in providing plaintiffs false information about the property. Plaintiffs allege that the county knew or should have known that plaintiffs would reasonably rely on the information given by the planner. In addition, plaintiffs allege that, as a result of the negligent misrepresentations of the county, plaintiffs were exposed to liability to SFG. Plaintiffs argue that the trial court erred in concluding that the evidence was insufficient to establish that the county had a special relationship with plaintiffs.

■ To make out a claim for negligent misrepresentation where only economic damages are sought, a plaintiff must establish "some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita*, 315 Or at 159. The inquiry as to whether there is a special duty created by status, relationship, or statute is a question of law. *See, e.g., Conway*, 324 Or at 239 (applying the rule in *Onita*). As the Supreme Court has explained:

> "[W]e first examine the types of relationships in which one party owes the other a duty to exercise reasonable care beyond the common law duty to prevent foreseeable harm.
>
> "Oregon law imposes such a duty of care upon certain professionals in actions toward their clients. For example, lawyers owe their clients a duty to exercise reasonable care, as do physicians toward their patients. In addition, if a contract between a professional and a client incorporates a general standard of skill or care to which the professional would be bound, independent[ly] of the contract, the professional may be liable in tort. Both engineers and architects may owe a duty of care in that situation.
>
> "Other types of relationships also may carry a heightened duty of care. For example, agents in a principal-agent relationship have a duty to act with due care and in their

principals' interests. Trustees also owe a heightened duty to act in the best interests of their beneficiaries, as well as a duty to act in good faith. Pledgees exercising a power of sale, shippers, and bailors also must exercise due care in behalf of their pledgors and customers. Finally, a liability insurer who undertakes a duty to defend owes its insured a duty of care that exists independent[ly] of the insurance contract, because the insured effectively relinquishes control over the defense to the insurer and places the insured's potential monetary liability in the insurer's hands.

"In *Onita*, this court described the relationships summarized above as those in which the party who owes a duty of care is acting, 'at least in part, * * * to further the economic interests of the "client," the person owed the duty of care.' 315 Or at 161 Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

"This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships. It also exists in the type of situation * * *, in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party. That special responsibility carries with it a duty to exercise reasonable care to avoid making negligent misrepresentations."

*Conway*, 324 Or at 239-41 (citations generally omitted) (emphasis in original).

In addition to the types of special relationships that the Supreme Court summarized in *Conway*, *id.*, the court in *Onita* also pointed out that

> "nongratuitous suppliers of information owe a duty to their clients or employers or to intended third-party beneficiaries of their contractual, professional, or employment relationship to exercise reasonable care to avoid misrepresenting facts."[9]

315 Or at 165.

Plaintiffs make two arguments to support their assertion that they had a special relationship with the county planner: first, they say that the county planner provided information to Edgel in the context of a special relationship because of the effect of the statute and the ordinance that we have previously discussed; and, second, that because the county planners' employment required them to provide zoning information to the public, they are nongratuitous providers of such information. Essentially the arguments are the same: because the county planners' work required them to use their professional expertise to provide zoning and land use information to members of the public, there exists a special relationship of entrustment in which the county has assumed a duty to plaintiffs to avoid providing inaccurate information.

Plaintiffs compare their relationship to the county with the relationship found in *Meininger v. Henris Roofing & Supply*, 137 Or App 451, 905 P2d 861 (1995), between a roofing company and home purchasers. In *Meininger*, the court found that the roofing company, hired by the seller's real estate agent to provide a roof inspection, had a duty of care to the purchasers to "exercise reasonable care to avoid making misrepresentations about the condition of the roof." 137 Or App at 454. In that case, the purchasers were able to recover costs for repairing the roof because the facts showed that they were the intended beneficiaries of the contractual relationship and that, by providing the inspection, the defendant was acting, at least in part, to further the economic interests of

---

[9] "A 'nongratuitous supplier of information' * * * is someone in the business of supplying information for a fee." *Conway*, 324 Or at 243.

the plaintiffs. *Id.* at 454-55. Here, plaintiffs reason that "[a]lthough the county does not charge a transactional fee for [its] service, the planners who provide it are the nongratuitous suppliers of information because they are paid a salary for providing it—presumably with funds provided by taxpayers." Plaintiffs assert that they are therefore the intended third-party beneficiaries of the county planners' employment agreement with the county and that they are owed a duty by the planner to exercise care on their behalf to insure that information given by the planner is correct.[10]

On the facts of this case, there is no reasonable inference to be drawn that the county planner who provided information to Edgel had a special relationship with her. No communication took place between the planner and Edgel that indicates that the planner assumed a duty other than that provided to any member of the public. Nor did the county and plaintiffs reach an understanding that the county would take on a particular responsibility or that plaintiffs entrusted the planner with the responsibility of exercising independent judgment on their behalf or furthering their economic interests. The relationship between plaintiffs and the county differs in its nature from those instances where there is a special relationship between the parties. No professional, formal or financial relationship existed between these parties. As real estate appraisers, plaintiffs and their employees made numerous telephone calls to the county planners to gather zoning information on properties. Plaintiffs spoke with whomever had counter duty that day. Their phone calls received the same kind of response that would be received by other appraisers or members of the public making such an inquiry. They did not pay for the information received from the person on duty. While the county may have viewed anyone who asked questions as a "customer," the planning department was not acting to further plaintiffs' economic

---

[10] Plaintiffs urge us to consider the *Restatement (Second) of Torts* § 552(3) (1976) and adopt its reasoning and to follow the holding of a Washington case that relies on it to find a special duty between a zoning administrator and a potential buyer of property. Rather than adopt the rule in section 552, the Supreme Court has chosen to look at "the scope of the duty and the scope of recovery on a case-by-case basis, in light of related decisions of this court." *Onita*, 315 Or at 159. In light of the Oregon precedents, we see no need to resort to the common law of another state to resolve the issue.

interests, nor had it received authorization from the county commissioners to exercise independent judgment on plaintiffs' behalf. Although plaintiffs apparently trusted the county to provide accurate information for their appraisal reports, the evidence does not show that the county agreed to provide, or held itself out as providing, information for the economic benefit of plaintiffs. On these facts, we hold that plaintiffs failed to establish that a special relationship existed between the county and themselves. Therefore, their negligent misrepresentation claim was properly dismissed.

Affirmed.