Argued and submitted November 14 Astoria High School, Astoria, reversed on appeal; cross-appeal dismissed as moot December 27, 2006, petition for review denied March 20, 2007 (342 Or 504)

WILD ROSE RANCH ENTERPRISES, LLC,
Keith Slater and Leone Slater,
*Respondents - Cross-Appellants,*

*v.*

BENTON COUNTY,
a political subdivision of
the State of Oregon,
*Appellant - Cross-Respondent,*

*and*

STATE OF OREGON;
Richard P. Benner, acting by and through
the Department of Land Conservation;
and Jim Brown, acting by and through
the Department of Forestry,
*Intervenors below.*

99-10286; A129209

149 P3d 1281

Cecil A. Reniche-Smith argued the cause for appellant - cross-respondent. With her on the briefs were Janet M. Schroer and Hoffman Hart & Wagner LLP.

Edward F. Schultz argued the cause for respondents - cross-appellants. With him on the briefs were Andrew J. Bean and Weatherford, Thompson, Cowgill, Black & Schultz, P.C.

Before Haselton, Presiding Judge, and Linder, Judge, and Brownhill, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Defendant Benton County appeals from a judgment entered in favor of plaintiff Wild Rose Ranch Enterprises, LLC (Wild Rose) on its claims for negligence and negligent misrepresentation, arguing that the trial court erred in denying defendant's motion for a directed verdict on those claims. Plaintiffs Wild Rose and Keith and Leone Slater cross-appeal, asserting that the trial court erred in dismissing the claims of individual plaintiffs, and also in limiting Wild Rose's damages to $100,000 pursuant to the Oregon Tort Claims Act. For the reasons set forth below, *see, e.g., Indian Creek Development Co. v. City of Hood River*, 203 Or App 231, 125 P3d 50 (2005), *rev den*, 340 Or 158 (2006); *SFG Income Fund, LP v. May*, 189 Or App 269, 75 P3d 470 (2003), we reverse on appeal. We also, concomitantly, dismiss plaintiffs' cross-appeal as moot.

On review of the denial of defendant's motion for a directed verdict, we set out the facts in the light most favorable to plaintiffs. If, after viewing the facts in that light, the moving party is entitled to judgment as a matter of law, then a directed verdict is appropriate. *Rutter v. Neuman*, 188 Or App 128, 132-33, 71 P3d 76 (2003).

Viewed consistently with that standard of review, the evidence at trial established the following material facts. The Slaters own a parcel of land in Wren, in rural Benton County. Their house is situated on one part of the parcel, and a rock quarry is situated on another part of the parcel. When the Slaters originally acquired the property, they did not acquire the mineral rights to the area on which the quarry was situated. Those mineral rights were owned by Western Timber Company (WTC).

In 1997, the Slaters were approached by Scoggin, who owned a rock-crushing business that supplied rock to highway construction projects, about the possibility of using the quarry as well as portions of the Slaters' land adjacent to the quarry. Keith Slater told Scoggin that WTC owned the mineral rights to the quarry but that he believed that WTC might be interested in selling those rights. Keith Slater knew

that, when WTC had operated the quarry in the past, a conditional use permit had been required. Keith Slater told Scoggin that a conditional use permit probably would be necessary to operate the quarry and that Scoggin should talk with defendant about that.

Scoggin contacted Minard, who worked as a land use planner for defendant. Minard told Scoggin that he did not think that a conditional use permit would be necessary. Minard later told Scoggin that he had talked with defendant's planning manager, Schneider, and that it was Schneider's opinion that Scoggin could proceed without a conditional use permit. Schneider subsequently wrote Scoggin a letter in March 1998, stating that "the County is not opposed to your company resuming mining activities, provided it occurs with[in] the pit boundaries identified by [the Department of Geology and Mineral Industries (DOGAMI)] and the County's Period review."

Scoggin showed Schneider's letter to Keith Slater, who then contacted WTC to discuss the possibility of purchasing the mineral rights to the quarry. WTC agreed to sell, and the Slaters formed Wild Rose, which purchased the mineral rights from WTC for $125,000. Wild Rose entered into a contract with Scoggin's company, CC&S Crushing, to operate the quarry.

On September 11, 1998, Schneider wrote another letter to Scoggin, directing him "to cease [operation of the quarry] until a conditional use permit has been issued." Wild Rose then applied for a conditional use permit, and defendant denied its application. As a result, Wild Rose and CC&S Crushing abandoned their contract.

Plaintiffs then brought this action for negligence and negligent misrepresentation, alleging the basic facts given above and asserting that defendant had a duty to provide correct information to the public, and that plaintiffs reasonably relied on the information provided. Plaintiffs sought damages to recover the $125,000 expended by Wild Rose to buy the mineral rights to the quarry, as well as $60,000 in lost revenues anticipated from the contract between Wild Rose and CC&S Crushing.

At the close of plaintiffs' evidence, defendant moved for a directed verdict, arguing, as pertinent on appeal, that (1) the Slaters as individuals should be dismissed as plaintiffs as the evidence did not demonstrate any harm that they suffered that was distinct from the damages alleged by Wild Rose; and (2) defendant was entitled to judgment as a matter of law against all plaintiffs on the ground that defendant had no duty to protect plaintiffs from economic harm. The trial court granted the motion as to the individual plaintiffs, but rejected defendant's second argument.

The jury returned a verdict in plaintiffs' favor and awarded damages of $163,866.10. The trial court reduced the damages to $100,000 pursuant to ORS 30.270 and entered a general judgment in plaintiffs' favor. Defendant appeals, and plaintiffs cross-appeal.

On appeal, defendant asserts that the trial court erred in failing to direct a verdict in its favor on plaintiffs' claims, because Oregon law does not permit a plaintiff to recover for purely economic harm caused by negligence or negligent misrepresentation unless a special relationship exists between the parties that gives rise to a defendant's duty to protect a plaintiff from such economic harm. *See generally Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992) ("[A] negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.").

Plaintiffs do not dispute that the present case involves only economic losses;[1] nor do they dispute that they were required to demonstrate the existence of a special relationship that gave rise to a heightened duty. Rather, plaintiffs argue that Benton County Code (BCC) 51.205(1) (1998) imposed the requisite duty on defendant to protect plaintiffs from economic losses resulting from provision of erroneous land use information and opinions. That ordinance provided, in part:

---

[1] *See generally Harris v. Suniga*, 209 Or App 410, 417-19, 149 P3d 224 (2006) (describing economic losses).

"The Planning Official is responsible for the administration of the Development Code. In carrying out these duties, the Planning Official shall have the following powers:

"(1)   The Planning Official shall provide the official interpretation of the Comprehensive Plan and Development Code."

Defendant responds that BCC 51.205(1) (1998) created no duty to members of the public, including persons applying for land use permits. Defendant further, and alternatively, argues that even if BCC 51.205(1) (1998) could impose some duty to the public, nothing in the code indicates that defendant intended that the breach of any such duty would give rise to tort liability. *See, e.g., Scovill v. City of Astoria*, 324 Or 159, 166-70, 921 P2d 1312 (1996) (addressing whether statutory text, construed in its totality, discloses whether the legislature "intended that a tort remedy would arise from breach of a duty created or imposed by statute"). In particular, defendant asserts, nothing suggests that defendant intended to undertake to protect members of the public from economic losses caused by negligent interpretations of its comprehensive plan and development code by the planning official.

As explained below, we conclude that defendant is correct in light of our prior case law, specifically *Indian Creek Development Co.* and *SFG Income Fund, LP*, involving substantially similar questions. We conclude, particularly, that plaintiffs' evidence was legally insufficient to establish that defendant undertook to further plaintiffs' economic interests, and that BCC 51.205(1) (1998) did not otherwise give rise to an actionable duty "beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pacific Corp.*, 315 Or at 159; *see Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 496, 39 P3d 947 (2002) ("[A] party has a heightened duty toward another when that party is acting, at least in part, to further the economic interests of the other by virtue of the other's relinquishment of control of the situation and consequent right to rely on the first party to achieve the desired outcome or resolution.").[2]

---

[2] Our formulation in *Lewis-Williamson* was derived, in part, from *Conway v. Pacific University*, 324 Or 231, 240, 924 P2d 818 (1996), in which the court observed

In *Indian Creek Development Co.*, the defendant city approved the plaintiff's application to subdivide its property. In doing so, the city noted the need for the improvement of a traffic intersection but explicitly did *not* condition the sub-division approval on such an improvement. 203 Or App at 233-34. The city's attorneys subsequently confirmed in a let-ter that it was the city's "legal position that it could not impose a condition of approval" requiring improvement of the traffic intersection and, thus, there was "no existing condi-tion of approval requiring anyone to install a traffic light." *Id.* at 234 (internal quotation marks omitted). Some months later, the city enacted an ordinance that authorized the city to require applicants who sought to develop property to pay proportional shares for any necessary improvements to pub-lic facilities affected by the proposed development. *Id.* Later, when potential buyers of plaintiff's subdivision lots inquired of the city, they were told—erroneously—that, in order to develop the lots, the buyers would have to pay the entire cost of improving the intersection. *Id.* at 234-35. Consequently, the potential buyers did not purchase the lots.

The plaintiff then brought an action against the city, alleging, *inter alia*, that the negligence of city planners in responding to the potential buyers' inquiries had caused it to incur purely economic losses from the lost lot sales. The trial court denied the city's motion for a directed verdict against the negligence claim, and the jury returned a verdict for the plaintiff on that claim. *Id.* at 233, 235.

We reversed. In so holding, we rejected the plaintiff's argument that the city was liable in negligence for purely economic losses because it had a "special relationship" with the plaintiff based either on (1) the city's approval of the sub-division without a condition concerning the intersection, (2) the city's subsequent specific representation, by way of its attorney's letter to the plaintiff, that it did not believe it could impose such a condition, or (3) the existence of provisions in the city's code governing the manner in which development could be conditioned on developers paying for improvements.

---

that the requisite "special relationship" arises when "the party who is owed the duty effectively has authorized the party who owes the duty to exercise independ-ent judgment in the former party's behalf and in the former party's interests."

As to the initial approval of the subdivision, we concluded that nothing in the approval process could be "interpreted to establish that defendant would act in the economic interests of plaintiff when reviewing applications for subsequent development." *Id.* at 236. As to the later specific representation by the city's attorney that the city did not believe it could condition the approval on the development of the intersection, we concluded that that also did not provide the basis for a special relationship: "[T]here is nothing in the text of that letter * * * that establishes that defendant agreed to act to further plaintiff's economic interests with relation to the subdivided property." *Id.* at 237. Finally, as to the provisions of the city code, we noted that, even assuming that the plaintiff was within the class of persons for whose benefit the provision was enacted, "there is 'no suggestion in the language of the ordinance that the [city] intended tort liability to exist even if the duty to' require only a proportional share of improvement costs had been breached." *Id.* (quoting *SFG Income Fund, LP*, 189 Or App at 277-78) (bracketed material in *Indian Creek Development Co.*).

*SFG Income Fund, LP*, was similar. There, the question was whether a county was responsible for economic losses caused when an employee in the county's planning department provided incorrect zoning information to an appraisal company because of a misfiled and inaccurate document. 189 Or App at 272-73. That erroneous information was incorporated into an appraisal report, which the plaintiff lender relied on in making a loan on the property, on which the borrowers subsequently defaulted. *Id.* at 273. The lender sued the appraisers and the appraisers alleged third-party claims against the county for negligence and negligent misrepresentation. *Id.* The county successfully moved for a directed verdict on the third-party claim. *Id.* at 272.

On appeal, we affirmed. In so holding, we assumed that a statute and an ordinance on which the plaintiff relied may have implicitly created a duty for the county to maintain accurate records. *Id.* at 275, 277. We concluded, as to the statute, that there was no indication "that the legislature intended the statute to protect members of the public from harm resulting from the receipt of inaccurate information about permitted land uses caused by the maintenance of

inaccurate records." *Id.* at 276. Similarly, as to the ordinance, "there is no suggestion in the language of the ordinance that the county intended tort liability to exist even if the duty to maintain accurate records is breached." *Id.* at 277-78.

Plaintiffs maintain that *Indian Creek Development Co.* and *SFG Income Fund, LP* are distinguishable from this case. Specifically, plaintiffs contend that *Indian Creek Development Co.* was qualitatively different in two aspects. First, *Indian Creek Development Co.*, in plaintiffs' characterization, "revolved around nothing more than the local government providing incorrect information." Second, because the plaintiff in *Indian Creek Development Co.* did not itself seek to develop the land but merely sought to sell it to those who would develop it, the plaintiff was not an intended beneficiary of the ordinance at issue in that case.

Neither of plaintiffs' proposed distinctions is persuasive. With respect to their contention that *Indian Creek Development Co.* involved "nothing more" than provision of incorrect information, we understand plaintiffs to be suggesting that this case differs because defendant not only provided incorrect information, but also later changed its position with knowledge that plaintiffs had relied on the earlier information and, ultimately, took action against plaintiffs to stop the mining. That purported distinction misses the mark. The fact that a defendant may have engaged in other, allegedly aggravating conduct after negligently providing erroneous information is immaterial as to whether, in the first instance, the defendant had an actionable duty, arising from a requisite special relationship, to provide the plaintiff with accurate information.

Plaintiffs' second proffered distinction—*viz.*, that the plaintiff in *Indian Creek Development Co.* was not an intended beneficiary of the ordinance upon which it relied—is similarly unavailing. Indeed, in *Indian Creek Development Co.*, we specifically noted in that case that the holding did not rest on any such distinction:

> "Furthermore, *even assuming that plaintiff*, notwithstanding the fact that it is not a land use applicant, *were within the class of persons for whose benefit the ordinance was*

*enacted*, here, as in *SFG Income Fund, LP*, there is 'no suggestion in the language of the ordinance that the [city] intended tort liability to exist[.]' "

*Indian Creek Development Co.*, 203 Or App at 237 (quoting *SFG Income Fund, LP*, 189 Or App at 277-78) (bracketed material in original; emphasis added). Rather, the dispositive point in *Indian Creek Development Co.*, as in *SFG Income Fund, LP*, was that the ordinance upon which the plaintiffs attempted to predicate a duty toward them revealed no intent to create tort liability. *Id.*

The same is true here. BCC 51.205(1) (1998) gives the planning official the authority to interpret the development code—and, for that matter, to enforce the development code. That ordinance does not suggest in any way that defendant intended to create tort liability in situations in which the planning official's interpretation of the development code proved to be faulty. Likewise, neither the statements made by Minard to Scoggin, nor the letter written by Schneider to Scoggin, evince any intent by defendant to undertake to protect plaintiffs' economic interests.

We conclude that plaintiffs' evidence failed to establish that a special relationship existed between plaintiffs and defendant that gave rise to a duty by defendant to protect plaintiffs from economic loss. Consequently, the trial court erred in denying defendant's motion for a directed verdict on plaintiff's claims for negligence and negligent misrepresentation. Given that disposition, plaintiffs' cross-appeal, challenging both the court's dismissal of the individual plaintiffs' negligence claims and the court's application of ORS 30.270 to reduce plaintiff Wild Rose's recovery, is moot.

Reversed on appeal; cross-appeal dismissed as moot.