Argued and submitted April 29, appeal dismissed as moot; reversed on cross-appeal December 1, 2010, petition for review denied April 7, 2011 (350 Or 230)

### Kay BELL,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

### PUBLIC EMPLOYEES RETIREMENT BOARD,
*Defendant-Respondent*
*Cross-Appellant.*

Marion County Circuit Court
07C11097; A140350

247 P3d 319

Aruna A. Masih argued the cause for appellant - cross-respondent. With her on the briefs was Bennett, Hartman, Morris & Kaplan LLP.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent - cross-appellant. With him on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Plaintiff is a retired member of the Public Employees Retirement System (PERS), which is administered by defendant, the Public Employees Retirement Board (PERB). Plaintiff alleged that PERB negligently provided her with inflated estimates of her retirement benefits and that, in reliance on those estimates, she retired earlier than she otherwise would have, to her economic detriment in the amount of $200,707. Defendant answered that plaintiff's claim lacked merit for two reasons: first, it was barred by ORS 238.455(6), set out below, under which a PERS member has no right to *estimated* benefits if they are more than the *actual*, properly calculated benefits to which a member is entitled by statute; and second, it was barred by the "economic loss rule" that, in most cases, precludes tort claims in which the only alleged damages are pecuniary. The parties filed cross-motions for summary judgment. After the trial court partially granted plaintiff's motion and denied defendant's, thereby resolving all of the disputed legal issues, the case was tried to a jury, which found in plaintiff's favor and awarded her $200,707 in damages. After trial, however, the court granted defendant's motion to reduce plaintiff's award to $100,000 pursuant to the cap on state agency liability in the Oregon Tort Claims Act (OTCA) and denied plaintiff's motion for post-judgment interest. Before this court, defendant renews its argument that plaintiff is not entitled to any damages, and plaintiff challenges the court's rulings limiting the damages that the jury awarded. We hold that plaintiff's claim was barred by the economic loss rule, and on that basis we reverse, thereby rendering moot plaintiff's challenge to the reduced damages and denial of post-judgment interest.[1]

For purposes of the appeal and cross-appeal, the following facts are undisputed. In 1971, plaintiff began her career as a public school employee in a PERS-covered position. She continued in that position for 21 years. However, beginning in June 1992 and for almost five years thereafter, she did not work due to a disability. During that time she

---

[1] Defendant's contention is a cross-appeal; plaintiff filed first. We deal with the cross-appeal first because it is logically prior and because it is dispositive.

received PERS disability benefits. She returned to PERS-covered work in 1997. Throughout her career, she received annual statements of her PERS account. On several occasions after returning to work, she asked PERS to provide estimates of her projected retirement benefits, and PERS did so. The statements and estimates were miscalculated; PERB apparently credited her account with interest accumulated during her disability, contrary to governing statutes and rules. As a result, of course, the stated accounts and estimates were too high. In reliance on those estimates, plaintiff retired in July 2005. She was 59 at the time.

For several months, PERS paid plaintiff consistently with the estimate it had repeatedly provided her: $4,249.10 per month. In October 2005, however, plaintiff received a letter from PERB informing her that the estimates (and the payments received up to that time) were erroneous and that henceforth she would be receiving approximately $1,000 less per month. PERS then sent plaintiff an invoice demanding reimbursement in the amount of $3,328.44 pursuant to ORS 238.715, which authorizes defendant to recover overpayments. Plaintiff unsuccessfully sought administrative review and subsequently brought this action in circuit court, ORS 238.450(4), alleging that, in reliance on defendant's negligent misrepresentation, she had retired at the age of 59 instead of 62, thereby losing three years of salary, three years of health insurance coverage, and three years' worth of PERS benefits for the rest of her life. She alleged that the total loss came to $200,707.

Before trial, the parties filed cross-motions for summary judgment. Plaintiff contended that the record established all the elements of negligent misrepresentation and that no genuine issue of material fact remained. Defendant, for its part, argued that plaintiff could not prevail because a statute, ORS 238.455(6), expressly disallowed plaintiff's claim for damages. That statute provides:

"No [PERS] member shall have any right to any allowance or other benefit other than that provided for in [PERS statutes] based on the board's estimate under this section

or based on any other estimate made by the board for any other purpose under [PERS statutes]."[2]

In addition, defendant argued that plaintiff's claim was precluded by the "economic loss" rule. Under that common-law rule as adopted by the Oregon Supreme Court in *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987), a tort claim for purely economic harm cannot succeed unless the plaintiff can point to a statute or a "special relationship" giving rise to a heightened duty of care, above and beyond the generic duty to avoid unreasonable risk of foreseeable harm. The trial court rejected defendant's argument and adopted both of plaintiff's, ruling that ORS 238.455(6) did not preclude plaintiff's action and that defendant owed her a heightened duty of care:

"I find that there is a special relationship here, and I know that [defendant] is correct when [it] says I'm venturing out into new legal territory here in the state of Oregon * * *. This is not a case about the relationship between the government and the public. This is a case about the relationship between a pension plan and a beneficiary of that plan. I don't think the analysis is markedly different whether you're talking about PERB or a private pension plan.

"* * * * *

"I also believe that [defendant] overstates [the effect of ORS] 238.455(6) and essentially I agree with the plaintiff's argument here which is that it does not bar a private right of action. It does not bar damages for negligent misrepresentation. It simply says you can't order benefits * * *. But it does not provide blanket immunity. Again, the Legislature could have said not only are no benefits going to be paid, but the PERB is not going to be liable for any negligence in providing its estimates. They certainly could have done that and they didn't. So while I believe that the statute would bar an order saying you, therefore, get

---

[2] The legislature addressed the issue of PERB's responsibility to provide members with accurate information in 2009. Beginning July 1, 2011, PERS members will be able to obtain from PERS a verification of their account balance. Benefits must be based on that balance and subsequent additions, and if PERS overpays it cannot reduce the benefit. Or Laws 2010, ch 1, §§ 2 - 4 (Spec Sess). The statute does not apply to or affect this case.

benefits, I don't believe that it bars damages for negligent misrepresentation if the plaintiff can make out that case."

The court declined to rule on whether plaintiff's reliance was justified, leaving that decision to a jury. A trial ensued. Defendant conceded negligence but contested reliance. The jury found in favor of plaintiff and awarded her $200,707 in damages—the exact amount she had sought in her complaint.

Following post-trial motions, however, the court reduced plaintiff's award to $100,000 pursuant to the tort cap in the OTCA and denied plaintiff's request for post-judgment interest. Plaintiff challenges both of those decisions. Defendant, for its part, challenges the trial court's denial of defendant's summary judgment motion, the court's partial grant of plaintiff's summary judgment motion, and the jury instruction asserting that ORS 238.455(6) did not prevent defendant's liability. We hold that defendant did not owe plaintiff any heightened duty of care. For that reason, the court should have granted defendant's motion for summary judgment and denied plaintiff's. The court erred in not doing so. That decision is dispositive; we therefore need not discuss either the scope of ORS 238.455(6) or any of the issues regarding plaintiff's damages.

■■ Preliminarily, plaintiff argues that the case is not reviewable because it is an appeal from the denial of defendant's motion for summary judgment. We reject that argument. Where, as here, the defendant assigns error to the court's grant of the plaintiff's partial summary judgment and also to the court's denial of the defendant's own motion for summary judgment, both assignments of error are reviewable. *Ellis v. Ferrellgas, L. P.*, 211 Or App 648, 652, 156 P3d 136 (2007). Although the court here announced, "On the negligent misrepresentation claim, I am denying both summary judgment motions," it also decided—as a matter of law—that ORS 238.455(6) did not bar PERB's liability and that PERB owed plaintiff a heightened duty of care. In effect, it granted plaintiff summary judgment on all of the contested legal issues. The practical effect of the trial court's ruling was to deny defendant's motion, which argued the opposite legal

conclusions, and partially grant plaintiff's. Defendant's assignments of error are therefore reviewable.

■      We begin with defendant's argument that plaintiff's claim is barred by the economic loss rule, because that argument is dispositive. The rule was first announced in Oregon in *Hale*, 304 Or at 284:

"[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. It does not suffice that the harm is a foreseeable consequence of negligent conduct that may make one liable to someone else, for instance to a client. Some source of a duty outside the common law of negligence is required."

(Citations omitted.) In 1992, the Supreme Court applied that rule in the context of a negligent misrepresentation case and concluded that, if a plaintiff can demonstrate that a defendant is subject to a heightened duty over and above the generic common-law duty to exercise reasonable care to prevent foreseeable harm, the plaintiff can bring a cause of action for economic loss based on his or her reliance on the misrepresentation. *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992). Since *Onita*, the courts have developed a body of case law demonstrating that a heightened duty of care can arise from two sources: either from statute, *e.g.*, *Scovill v. City of Astoria*, 324 Or 159, 166, 921 P2d 1312 (1996), or by virtue of a "special relationship" between the parties, *e.g.*, *Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996). In this case, plaintiff relies on both sources, urging us to affirm the trial court's ruling that defendant owed plaintiff "a fiduciary duty * * * specifically by statute," and also that "there is a special relationship" between the parties. We start with the former ruling.

■ ■      "Whether a statute creates a duty, the breach of which could be tortious to the one harmed as a result of the breach, is determined by discerning what the legislature intended." *SFG Income Fund, LP v. May*, 189 Or App 269, 275, 75 P3d 470 (2003) (citing *Scovill*, 324 Or at 166). In other words, to establish that liability for economic harm arises from a statute, plaintiff must persuade us that the statute's authors intended not only to create a duty, but also intended

that "the breach of any such duty would give rise to tort liability." *Wild Rose Ranch Enterprises v. Benton County*, 210 Or App 166, 171, 149 P3d 1281 (2006), *rev den*, 342 Or 504 (2007).

Plaintiff argues that PERB's heightened duty and the legislature's intent to create tort liability are found in ORS 238.660 (2007),[3] which provides, in part,

"(1) The Public Employees Retirement Fund is declared to be a trust fund, separate and distinct from the General Fund[.] * * * Except as otherwise specifically provided by law, the Public Employees Retirement Board established by ORS 238.630 is declared to be the trustee of the fund. Consistent with the legislative intent expressed in ORS 238.601, and to the extent it is consistent with the board's fiduciary duties, the board shall give equal consideration to the interests of participating public employers and the interests of members. Nothing in this subsection shall be construed to impose a fiduciary duty on the board to consider the interests of public employers, and the board shall consider the interests of public employers only with respect to matters unrelated to the board's fiduciary duties as trustee of the fund.

"(2) Until all liabilities to members and their beneficiaries are satisfied, assets of the fund may not be diverted or otherwise put to any use that is not for the exclusive benefit of members and their beneficiaries."

Citing those two provisions, plaintiff argues that ORS 238.660 "expressly provides that the PERS Fund is a 'trust' fund. PERB is the trustee of the PERS Fund and PERS members are beneficiaries of that trust fund." In other words, plaintiff argues that the legislative intent behind the statute is to form a fiduciary relationship between PERB and individual PERS members like plaintiff, and thus to impose on PERB all the legal duties that accompany such a relationship. Plaintiff claims this fiduciary relationship applies to ORS chapter 238 in its entirety, and demonstrates that the legislature contemplated PERB's liability to PERS members for breach of fiduciary duties, such as "the duty to furnish

---

[3] ORS 238.660 was amended by Oregon Laws 2009, chapter 889, section 2; that amendment does not affect our review and we refer to the 2007 version throughout.

'complete and accurate' information," which plaintiff cites from the *Restatement (Second) of Trusts* (1959).

We are not convinced that ORS 238.660(1) and (2) have the effect that plaintiff claims for them. Those provisions, read together, do not demonstrate legislative intent to create individual fiduciary relationships between PERB and every individual public employee in PERS, let alone tort liability for inaccurate account estimates. ORS 238.660(1) names PERB as trustee of the *fund*, and the fund consists of assets pooled from all PERS members and invested for their benefit; thus, PERB's fiduciary duties may extend collectively to all members, and ultimately PERB is required to act in the best interest of all members.

A more serious problem with plaintiff's argument is that it does not account for more obviously relevant statutes. ORS 238.455(6), as we have explained, provides that no PERS member can claim entitlement to estimated benefits if the estimate differs from properly computed benefits. The other provisions of ORS 238.455, sections (1) through (5), govern PERB's authority to calculate a recent PERS retiree's monthly allowance or benefit from an estimate if PERB "is unable to calculate the amount of the monthly payment in time to allow mailing of the monthly payment to the member within 62 days of the date the first monthly payment is due." ORS 238.455(1). The statute further instructs PERB to "continue to mail estimated payments under subsection (1) of this section until such time as the correct amount of the monthly payment is determined." ORS 238.455(2). PERB must also "notify the member receiving an estimated payment under subsection (1) of this section that the payment is an estimated payment only," ORS 238.455(3), and to notify the member that, in the event that the estimate is different from the "correct amount due," ORS 238.455(4), PERB

"may increase or decrease the monthly payment to the member until such time as the total difference between the amount or amounts the member received and the amount or amounts the member should have received is accounted for. Thereafter the member shall receive the monthly payment as finally calculated by the board."

ORS 238.455(4). Further, ORS 238.715(1) provides,

> "If the Public Employees Retirement Board determines that a member of the Public Employees Retirement System or any other person receiving a monthly payment from the Public Employees Retirement Fund has received any amount in excess of the amounts that the member or other person is entitled to under this chapter and ORS chapter 238A, the board may recover the overpayment or other improperly made payment [by a variety of methods]."

These statutes may or may not amount to a universal "hold harmless" shelter for PERB with respect to erroneous estimates (as defendant argues), but in any event it is inconceivable that the legislature would enact those statutes and, at the same time, contemplate that a PERS member could avoid their consequences by reformulating a claim for estimated benefits as a tort claim for negligent misrepresentation. We therefore reject plaintiff's statutory argument.

■■    For many of the same reasons, we reject her "special relationship" argument as well. In *Onita*, 315 Or at 160, the Supreme Court explained that a "professional or contractual relationship[ ] may * * * give rise to a tort duty to exercise reasonable care on behalf of another's interests." To determine if such a duty exists between parties, "we examine the nature of the parties' relationship and compare that relationship to other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship." *Id.* A defining quality of those relationships is that "the professional who owes a duty of care is, at least in part, acting to further the economic interests of the 'client,' the person owed the duty of care." *Id.* at 161. The court expanded this definition in *Conway*:

> "Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation

at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

"This special responsibility exists in situations * * * in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party. That special relationship carries with it a duty to exercise reasonable care to avoid making negligent misrepresentations."

324 Or at 240-41 (emphasis in original).

In application, the courts have adhered closely to those factors, even, as relevant to this case, where the allegedly negligent actor was a government. In *SFG Income Fund, LP,* 189 Or App at 281-82, the court declined to extend the "special relationship" label to an interaction between a county planner and the plaintiffs who received inaccurate zoning information from the county. The court explained that there was no communication between the parties or other indicators of an understanding "that the county would take on a particular responsibility or that plaintiffs entrusted the planner with the responsibility of exercising independent judgment on their behalf or furthering their economic interests. * * * No professional, formal or financial relationship existed between these parties." *Id.* at 281. The court's analysis in *Loosli v. City of Salem,* 215 Or App 502, 170 P3d 1084 (2007), *aff'd,* 345 Or 303, 193 P3d 623 (2008), led to a similar decision; the court held that the city did not owe the plaintiffs a heightened duty to accurately report zoning records, and explained, "There are no circumstances in this case from which it can be inferred that plaintiffs asked the city or its employees to assume duties or responsibilities beyond those imposed by the statute and the ordinary citizen-local government relationship that the statute contemplates." *Id.* at 510.

■ ■ Thus, a "special relationship" is defined by these traits: (1) One party relinquishes control over matters, usually financial, and entrusts them to the other party, *Conway,* 324 Or at 240-41; (2) The party with control is authorized to

exercise independent judgment; (3) in order to further the other party's interests; and (4) The relationship either is, or resembles, other relationships "in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship," *Onita*, 315 Or at 160. In such relationships, the party in control has a heightened duty to the other party, and the other party has a right to rely on the controlling party's non-negligent performance of that duty.

Plaintiff contends that her relationship with PERB meets all of these criteria. In particular, she points out that only PERB has access to the data on which an estimate is based. She notes that PERB is required by statute to provide annual statements to PERS members, and those statements contain benefit estimates; indeed, PERB urges PERS members nearing retirement to obtain free estimates. She argues primarily that the relationship between the parties resembles a "trustee-beneficiary" relationship, with PERB in the role of trustee; members give PERB their own funds and PERB holds them for the members' exclusive benefit. She concludes that, for all of those reasons, PERB has a heightened responsibility to exercise reasonable care, and members have a right to rely on PERB to do so. Such relationships are "special." *Conway*, 324 Or at 240.

Much of plaintiff's argument is correct. ORS 238.660(1) refers to the Public Employees Retirement Fund (PERF) as a "trust" fund. PERS members do, in fact, relinquish control over part of their salaries and entrust PERB to exercise prudent judgment in maintaining the fund into which the contributions are deposited. Indeed, it could be argued that PERB has a duty to exercise prudent judgment in overseeing the fund. Nonetheless, we are not persuaded that the relationship is "special" for purposes of the economic loss rule as it applies in this case. That is so for several reasons.

First, although ORS 238.660(1) refers to a trust, the statute (as we discuss above) names PERB as trustee of the *fund*. PERB, therefore, is required to act in the best interest of all members, not individual PERS members. And even if a fair reading of the statutes indicated that the legislature

intended to call the relationship between members and PERB a trust, that fact is not decisive. We have held that the question whether a special relationship exists requires a functional as opposed to a formal analysis; "the crucial aspect of the relationship is not its name, but the roles that the parties assume." *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev den*, 334 Or 190 (2002). Where, as here, the relationship is created and defined by statute, references to common-law relationships cannot supersede the statutory framework that the legislature actually established.

To determine what that framework is, we focus on

> "the roles that the parties assume *in the particular inter-action* where the alleged tort occur[s]. * * * [T]he relationship between an insurer and its insured is special with respect to the insurer's performance of its duty to defend, so that negligent performance of that duty gives rise to a tort claim, but the same relationship is not special with respect to the insurer's refusal to settle within policy limits."

*Id.* (citation omitted; emphasis added). Likewise, although the relationship between PERB and a member might be special with respect to PERB's duty to exercise prudent judgment in managing funds, it does not follow that the relationship is special with respect to other duties.

The duty at issue in this case is the provision of estimates. Because, again, the relationship is created and defined by statute, we must look to statutes to determine whether PERB has a *heightened* duty in that respect. We conclude that it does not. As an initial matter, the legislature has chosen to use the word "estimate," which by itself conveys to members that there is no duty of accuracy. More concretely, ORS 238.455(6) informs members that, if an estimate varies from an actual entitlement, the actual entitlement is what the member receives; other sections of ORS 238.455 provide procedures for PERB to recoup overpayments, an action also authorized by ORS 238.715. These statutes are, in essence, disclaimers of any duty to provide binding benefit entitlement at any time before formal calculation of benefits, and, by the same token, warnings to members that they cannot rely on estimates. There is, then, no special relationship

between PERB and plaintiff with respect to any duty to provide accurate predictions of her retirement benefits, and the trial court erred in ruling otherwise. We therefore reverse.

Appeal dismissed as moot; reversed on cross-appeal.