Argued and submitted June 4, decision of Court of Appeals and judgment of
circuit court affirmed October 2, 2008

Byron LOOSLI
and Melinda Loosli,
husband and wife;
Ben Lemire and Cynthia Lemire,
husband and wife;
and Divine Guidance, LLC,
dba Just a Good Car Lot,
*Petitioners on Review,*

*v.*

CITY OF SALEM,
a municipal corporation,
*Respondent on Review,*

*and*

Avis B. WOODRUM
and Louise Woodrum,
husband and wife,
*Defendants.*

(CC 04C-17616; CA A130044; SC S055509)

193 P3d 623

Eric S. Postma, of Gary M. Bullock and Associates, PC, Portland, argued the cause and filed the brief for petitioners on review. With him on the briefs was Meredith Boyden.

William F. Gary, of Harrang Long Gary Rudnick PC, Salem, argued the cause and filed the brief for respondent on review. With him on the brief was Sharon A. Rudnick.

David F. Rees, of Stoll Stoll Berne Lokting & Shlachter PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

KISTLER, J.

**KISTLER, J.**

The question in this case is when a public body that provides information pursuant to a statute will be liable for negligently providing incorrect information. The trial court ruled, on summary judgment, that defendant City of Salem owed plaintiffs no statutory or other duty and thus was not responsible for any economic damages that plaintiffs suffered as a result of the city's negligence in providing information. A divided, en banc Court of Appeals affirmed. *Loosli v. City of Salem*, 215 Or App 502, 170 P3d 1084 (2007). We allowed plaintiffs' petition for review and now affirm the Court of Appeals decision and the trial court's judgment.

■ Plaintiffs wanted to start a used car business in Salem and leased property for that purpose.[1] Later, plaintiffs applied to the Driver and Motor Vehicle Services Division (DMV) of the Oregon Department of Transportation for a "vehicle dealer certificate," a necessary prerequisite for operating a used car business. ORS 822.025(6) requires that every application for a vehicle dealer certificate include, along with other information, a certificate from a local government official stating that the applicant's business complies with local land use and other ordinances.[2] DMV has prepared a preprinted application for a vehicle dealer certificate that sets out, at the bottom of the application form, the following certification (followed by a space for the local official's signature):

"As the zoning official for the locality in which this business is located, I verify by my signature below that the location of this business as stated on this application, complies with

---

[1] In reviewing a grant of summary judgment, we view the facts from the summary judgment record and all reasonable inferences that we may draw from them in the light most favorable to the nonmoving party—in this case, plaintiffs. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004).

[2] ORS 822.025(6) requires that every application for a vehicle dealer certificate include, along with other information:

"A certificate signed by a person authorized by the local governing body to do so, stating that the location of the business as given in the application for a [vehicle dealer] certificate complies with any land use ordinances or business regulatory ordinances of the city or county."

any land use ordinances and business regulatory ordinances of the city or county, as appropriate pursuant to ORS 822.025[(6)]."

Melinda Loosli, one of the plaintiffs in this case, went to the Salem planning department and submitted plaintiffs' DMV application for the city's review and approval. An associate city planner signed the bottom part of plaintiffs' DMV application and thus certified that plaintiffs' business complied with the city's land use and business regulatory ordinances. The associate city planner later did not remember signing plaintiffs' application; she explained, however, that ordinarily she would have checked the business address listed on the application against a computer database before signing it.

Plaintiffs submitted their completed application to DMV, which approved it, and plaintiffs put additional time and money into starting their business. Shortly after the city signed plaintiffs' DMV application, it notified them that an overlay zone applied to their property, that automobile sales were not a permitted use within the overlay zone, and that plaintiffs could not sell cars at their proposed location. After receiving the city's notice, plaintiffs moved their business to a different location within the city.

Plaintiffs then filed this action, alleging that the associate city planner had been negligent when she mistakenly certified, on the DMV application for a vehicle dealer certificate, that plaintiffs' business complied with local land use ordinances. Plaintiffs alleged that they had experienced economic losses as a result of the employee's negligence.[3] The city moved for summary judgment on plaintiffs' negligence claim. It argued that, even assuming that its employee had acted negligently and that the resulting damages were reasonably foreseeable, the city was not liable for plaintiffs' economic losses unless it owed plaintiffs some duty above and beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. The city contended that no such duty existed. The trial court agreed, granted the city's motion, and entered judgment in the city's favor. As noted, a

---

[3] Plaintiffs also brought a claim for rescission against the persons who had leased the land to them, a claim that the parties later settled.

divided Court of Appeals affirmed the trial court's judgment, and we allowed plaintiffs' petition for review.

■  The issue on review is narrow. Plaintiffs do not dispute that " '[o]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property.' " *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004) (quoting *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987)). Nor do they dispute that "liability [in negligence] for purely economic harm 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.' " *Id.* (quoting *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992)). It follows from those decisions that, even if it was reasonably foreseeable that plaintiffs would suffer economic loss as a consequence of the city's actions, that fact is not sufficient to state a negligence claim against the city. "Some source of a duty outside the common law of negligence is required." *Hale*, 304 Or at 284.[4]

Before the Court of Appeals, plaintiffs argued that a "source of a duty outside the common law of negligence" could be found either in ORS 822.025 or in their relationship with the city. On review, plaintiffs acknowledge that the city did not owe them any duty under ORS 822.025. They argue, however, that their relationship with the city imposed a duty on it to protect their economic interests. That relationship (and the city's resulting duty) arose, plaintiffs argue, when Melinda Loosli submitted plaintiffs' DMV application to a city employee for her certification and the city employee signed it.[5] In arguing that that transaction gave rise to a relationship that imposed a duty on the city, plaintiffs note that

---

[4] In this case, plaintiffs alleged a negligence claim against the city; they did not allege a negligent misrepresentation claim. The city has argued that the economic loss doctrine, summarized in the text above, bars plaintiffs' claim. That argument applies equally to negligence and negligent representation claims, and the validity of the city's argument is the only issue before us. We express no opinion on whether the evidence was sufficient to establish other elements of plaintiffs' claim.

[5] In the trial court and also in the Court of Appeals, plaintiffs relied on statements that city employees made to them during earlier telephone calls. On review, plaintiffs do not rely on those calls; instead, they base their relationship with the city solely on their submission of the DMV application to the employee and the employee's signing it.

they paid the city a fee for signing the certification on their DMV application, that ORS 822.025 required them to get the certification from the city, and that they relied on the certification. The city responds that, in signing the certification, it was carrying out its role in a regulatory scheme that is intended to protect the public's interests, not plaintiffs'. The city reasons that, if the statutory scheme imposes no duty on it to protect plaintiffs' interests, as plaintiffs acknowledge, then any relationship that arose solely out of the city's compliance with ORS 822.025(6) cannot impose any greater duty on the city than the statute does. In short, the city argues that its regulatory role in this case both defines and limits the nature of its relationship with plaintiffs.

■      In analyzing the parties' arguments, we begin with the relevant statutes. Generally, a person may not engage in the business of buying, selling, or trading new or used vehicles without first obtaining a vehicle dealer certificate. *See* ORS 822.005 (making it an offense to engage in those acts without a vehicle dealer certificate); ORS 822.007 (authorizing an injunction to prevent engaging in those acts without a vehicle dealer certificate). To obtain a vehicle dealer certificate, a person must submit an application to DMV together with proof that the person meets certain bonding, insurance, education, and other requirements. *See* ORS 822.020 (stating those requirements). The application must contain the applicant's contact information,[6] the business's name, the business's location, and a certificate signed by a local official that the proposed business complies with "any [local] land use ordinances or business regulatory ordinances." *See* ORS 822.025 (setting forth these and other requirements for the application).

The statutes provide that DMV shall examine the application and may investigate any statements in the application. ORS 822.035(1). If DMV is satisfied that an applicant is entitled to a vehicle dealer certificate, it shall issue a certificate that allows the dealer to conduct business under the certificate. ORS 822.035(2). If a dealer wishes to expand its

---

[6] If the applicant is a partnership or corporation, the application must include the names and residences of either the partnership's members or the corporation's principal officers. ORS 822.025(1).

business to an additional location or wishes to move an existing business to a different location, it must obtain either a supplemental or a corrected vehicle dealer certificate from DMV. ORS 822.040(2), (3). The failure to do so constitutes a Class A misdemeanor. *See* ORS 822.045(1)(a), (b) (describing offenses); ORS 822.045(4)(a), (b) (classifying those offenses).

These statutes reflect a comprehensive legislative policy choice to regulate the business of buying, selling, and trading vehicles. The requirement that dealers meet minimum insurance, bonding, and educational requirements serves to protect consumers. The requirement that dealers provide the names of their principals, their addresses, and their business locations to DMV as part of the application serves the same purpose; it allows DMV to monitor the dealers, to ensure that dealers whose vehicle dealer certificates have been revoked do not open a new business, and to make periodic inspections of the dealers' businesses. *See* ORS 822.035(5) (authorizing DMV to inspect dealer records and inventory); ORS 810.480 (authorizing police officers to inspect dealer records and inventory for compliance with the vehicle code).

The requirement in ORS 822.025(6) that an applicant for a vehicle dealer certificate include, as part of its application to DMV, a certificate from a local government official that the applicant's business complies with "any [local] land use ordinances and other business regulatory ordinances" serves a related but separate regulatory purpose. It helps ensure that state and local regulatory bodies act in a coordinated fashion. In particular, it helps DMV to ensure that any business that it authorizes will also comply with local regulatory requirements. As plaintiffs have acknowledged, the certification that ORS 822.025(6) requires is not intended to protect an applicant's interests. Rather, the certification assists DMV in its task of deciding whether to approve the application and thus protects the interest of the public at large. With that statutory background in mind, we turn to plaintiff's argument that the city's compliance with ORS 822.025(6) gave rise to a "special relationship" between the city and plaintiffs that imposed a duty on the city to protect plaintiffs' economic interests.

Not every relationship gives rise to a duty "beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *See Onita*, 315 Or at 159 (stating standard). Determining which relationships give rise to such a duty has not always proven easy, however. This court has observed that section 552 of the *Restatement (Second) of Torts* (1977) provides a good starting point for the analysis when a party has been negligent in obtaining or communicating information. *Id.* (describing that rule as "close to the mark").[7] The court, however, has declined to adopt that section of the *Restatement* as a "black letter 'rule,' " *id.*—a view that sometimes has divided the court. *Compare Conway v. Pacific University*, 324 Or 231, 244, 924 P2d 818 (1996) (holding that defendant "did not have a special responsibility to exercise independent judgment in [the plaintiff's] behalf and to look after [the plaintiff's] interests"); *with id.* at 251 (Durham, J., dissenting) (urging adherence to section 552).

We need not revisit the issue that divided the court in *Conway* to resolve this case. Under section 552 of the *Restatement*, plaintiffs' claim against the city fails. Subsection (1) of section 552 states the general rule of liability for negligently obtaining or providing incorrect information that results in economic damages only. *Restatement* at § 552 comment a. It provides that a person "who, in the course of his

---

[7] Section 552 of the *Restatement (Second) of Torts* defines the extent of liability for a person who makes certain negligent misrepresentations in the course of his or her business, profession, or employment. It provides:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

business, profession or employment [negligently] * * * supplies false information for the guidance of others in their business transactions" is subject to liability for economic loss that the false information causes.

In this case, the city did not sign the certification on plaintiffs' DMV application "for the guidance of [plaintiffs] in their business transactions." Rather, the city was acting pursuant to ORS 822.025(6).[8] As such, the city's certification on the DMV application allowed DMV to coordinate state and local regulatory requirements and thus provided guidance to DMV. Because the city did not supply the information for plaintiffs' guidance in their business transactions, plaintiffs' claim does not satisfy one of the criteria stated in section 552(1) of the *Restatement*.[9]

Subsections (2) and (3) of section 552 point in the same direction. Subsection (2) limits the scope of liability stated in subsection (1). It provides that, generally, the liability of a person who negligently supplies incorrect information "is limited to loss suffered [b]y the person * * * for whose benefit and guidance he intends to supply the information." *Restatement* at § 552(2). The limitation in subsection (2) mirrors one of the criteria for liability in subsection (1). *See Restatement* at § 552(1) (providing for liability for negligent misrepresentation for persons who supply information for "the guidance of others in their business transactions"). As explained above, the city provided the certification on plaintiffs' DMV application for DMV's guidance. It follows that, under subsection (2), the city was not liable to plaintiffs.

Subsection (3) states an exception to the limitation on liability in subsection (2). It provides that, when a person

---

[8] Plaintiffs do not argue that the city employee signed the certification for any reason other than to comply with ORS 822.025(6); that is, this is not a case in which the relationship between the city and plaintiffs went beyond the city's discharge of its duties under ORS 822.025(6).

[9] Plaintiffs argue that the fact that they paid the city a fee means that the city had a duty to protect their economic interests. Plaintiffs misperceive the role that their payment of a fee plays. Under the *Restatement (Second) of Torts*, a person who provides information gratuitously has no duty to exercise reasonable care. *Restatement* at § 552 comment c. The fact that a gratuitous transaction imposes no duty does not mean that every nongratuitous transaction imposes such a duty. Under the *Restatement*, the other criteria set out in section 552 must be met. As explained above, plaintiffs' claim does not meet those criteria.

is under a public duty to provide information, liability extends to "the class of persons for whose benefit the [public] duty is created." *Restatement* at § 552(3). Liability, however, extends no further. Not only does the latter point follow from the fact that subsection (3) is an exception to the limitation on liability stated in subsection (2), but the comment to subsection (3) makes that point clear. It explains:

> "The scope of the defendant's duty to others in these [public duty] cases will depend upon the purpose for which the information is required to be furnished. The purpose may be found to be to protect only a particular and limited class of persons, as when a statute requires insurance companies to file information concerning their finances with a state insurance commissioner is found to be only for the protection of those buying insurance. In such a case the liability of the company when it negligently gives false information extends only to those who take out insurance policies and only to losses suffered through taking out the policy."

*Restatement* at § 552 comment k.

For the purposes of this case, we assume that ORS 822.025(6) imposed a duty on the city to provide the certification on plaintiffs' DMV application.[10] As explained above, however, that certification is not intended to benefit plaintiffs specifically, and the comment to subsection (3) makes clear that a person who provides information pursuant to a statutory duty is liable only to the specific class of persons whom the statute is intended to benefit. Subsection (3) thus confirms that the city owes plaintiffs no duty under ORS 822.025(6) to protect their economic interests.

To be sure, plaintiffs do not rely on ORS 822.025(6) as the source of any duty that the city owes them. Rather, they argue that a duty arose from their relationship with the city. However, when the only relationship with the city that plaintiffs identify arose solely out of the city's compliance with ORS 822.025(6), that relationship does not impose any

---

[10] ORS 822.025(6) requires applicants to include a certification from a local government official, but it does not explicitly place a duty on the local government to provide the certification. The city's argument assumes, however, that ORS 822.025(6) implicitly places a public duty on it to provide the certification, and we accept that assumption for the purposes of analyzing plaintiffs' claim.

greater duty on the city than ORS 822.025(6) does. As both the trial court and the Court of Appeals correctly recognized, the city owed no statutory or other duty to plaintiffs that would permit them to state a negligence claim against the city for purely economic losses.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.